## SMITH et al. v. CITY TRANSP. CO.
### No. 14406.

Court of Civil Appeals of Texas. Dallas. Nov. 30, 1951.

Rehearing Denied Jan. 11, 1952.

Storey, Sanders, Sherrill & Armstrong, Dallas, for appellants.

Turner, Atwood, White, McLane & Francis, and Wm. V. Counts, and Thos. R. Hartnett III, all of Dallas, for appellee.

YOUNG, Justice.

The suit was to recover damages for personal injuries sustained by Milton Smith and sister, Albie Frances Smith, following a collision between defendant's taxicab with another car; the cab company impleading Blaze Watkins, driver of such other car in cross-action. The trial was to a jury, plaintiffs thereafter filing motion for verdict non obstante veredicto, and in the alternative for mistrial; defendant company filing motion for judgment. On hearing, the latter motion was sustained with defendant's judgment in consequence, from which court ruling this appeal is taken. Defendant herein refers to appel-

lee City Transportation, and driver of second car is referred to as third party defendant, or by name.

The accident occurred on the afternoon of November 6, 1948 at the intersection of Moreland Street and Swiss Avenue, East Dallas, while plaintiffs (occupants of cab) were being transported to a football game at the Dallas Cotton Bowl, Fair Park, by way of Moreland. Moreland, a 30-foot north and south street, makes a dog-leg to the right to one traveling south; and defendant's taxicab driver, on entering Swiss, either had made or was making the offset turn when hit on right rear door by the Watkins car, traveling east, plaintiffs suffering injuries and damages estimated by the jury at $7,604.70.

The material issues made by pleading of the parties and testimony are reflected in the jury verdict, summarized as follows: (1) That defendant's driver did not fail to keep a proper lookout for approach of automobiles when entering the intersection of Swiss Avenue and Moreland Street; (2) that the failure of taxi driver Miller to sound a horn on the occasion in question was *not* negligence (defined as the failure to use a high degree of care); (3) that said driver did not fail to have his taxicab under control; (4) was not operating same at an excessive rate of speed under the existing circumstances; (5) he did not fail to stop his cab at the entrance of Swiss Avenue; (6) nor fail to yield the right-of-way to the automobile being driven by Watkins; (7) plaintiffs did not fail to keep a proper lookout; (8) third party defendant failed to drive to the left and rear of the taxicab and thereby avoid the collision, which was negligence but not a *sole* proximate cause of the collision.

We will consider together appellants' points, one through six, although appellee argues their insufficiency because not supported by requisite assignments of error. Under these points, the contention is made in effect that from his own testimony and as a matter of law, the taxi driver Miller failed to exercise the high degree of care required of him toward passengers, at least in matter of lookout and failure to sound

horn; and the trial court should have so found on motion non obstante veredicto.

These contentions are refuted, we think, by the following testimony of defendant's cab driver taken from appellants' brief:

"Q. (By Mr. Strasburger) Did you see anybody coming? A. I didn't see anybody to my left and couldn't see anybody to my right until I got out in the street—he was so far off. I watched and thought I had plenty of time to get across. * * *

"Q. (By Mr. Storey, Sr.) I am talking about when you stopped still. Could you see through that shrubbery there up Swiss Avenue to the right? (Direction from which Watkins' car was moving.) A. I couldn't see it clearly.

"Q. And you moved on? A. Yes.

"Q. And you kept going without slowing down anymore? A. Right. I didn't see a car in a half a block of me. * * *

"Q. (By Mr. Storey, Sr.) You knew Swiss Avenue was a heavily traveled street, didn't you? A. I knew it might be. Yes.

"Q. You have traveled it many times? A. Yes, sir.

"Q. And you never looked until after you got out into the street? A. I couldn't see clear up the street until I got out into the street. * * *

"Q. (By Mr. Burns) What did you do about avoiding the accident? A. I couldn't do anything. He hit me before I thought about him hitting me. I didn't expect him to hit me.

"Q. When you first saw him, you were to the center of the street and he wasn't behind you then? A. He wasn't behind me—no. * * *

"Q. (By Mr. Burns) Were you trying to get out of the way? A. No, I didn't think there was any danger.

"Q. Because he was so far away? A. Yes.

"Q. It turned out he was closer than you thought? A. He was going faster than I thought he was going.

"Q. Now, Mr. Miller, the first time you saw him was when you got to the center of the street, is that right? A. No,

I wasn't quite to the center. I was in the street before I saw him.

"Q. You said twice that you were about the middle of the street? A. The last time I seen him, I was at the middle.

"Q. You saw him twice? A. I saw him when I got in the middle of the street, but he was over half a block away from me.

"Q. You saw him a half block away? A. I seen him after I got out into the street.

"Q. And before you could go across the 30-foot street he hit you? A. Right. Before I got plumb clear."

Obviously from the foregoing statements of Miller he was maintaining a lookout, its sufficiency being for the jury's determination. The issue should be submitted when the person sought to be charged "says he looked prior to starting across the street." Blunt v. H. G. Berning, Inc., Tex.Civ.App., 211 S.W.2d 773; Texas Jurisprudence (Ten Year Supp.), Vol. 2, sec. 207. It is also evident from the same testimony of Miller that a jury question was involved as to whether under the circumstances a sounding of his horn prior to moving into the intersection would have served any useful purpose.[1]

It will be noted that neither plaintiffs nor the cab company were found to be at fault with respect to the collision and no issue on unavoidable accident was requested by either side. Third party defendant was also acquitted of negligence as a sole proximate cause of injury on the single issue of his failure to drive to the left and rear of the cab. In this connection the cab company in its cross-action against Watkins had pled negligence on his part proximately causing the collision in various other particulars: for instance, alleging that Watkins had failed to yield the right of way to a ve-

hicle which had first entered the intersection in violation of Art. 85–89(a), Dallas City Ordinance, reading: "The driver, operator or person in charge of a vehicle, street car, bus or trolley bus approaching an intersection shall yield the right-of-way to a vehicle, street car, bus or trolley bus which has entered the intersection from a different highway"; and that the cab and its occupants had the right-of-way on the occasion in question is virtually admitted under the cross-examination of Watkins by appellee's counsel. His testimony placed the two vehicles at time of impact at *south* intersection of Moreland and Swiss, and follows:

"Q. That put the front end of our cab out in Moreland, clear out of the intersection, didn't it? A. Right.

"Q. How did it get there if you didn't knock it there? A. He almost made it.

"Q. Almost made it? A. Right. You see, I was more so on the South end of Moreland than I was past.

"Q. When he almost made it, and then you hit him, you were on the right side of the street? A. Right.

"Q. That put his front end of his cab on Moreland Street? A. Yes.

"Q. The front end was already past the intersection, he had almost made it, is that the way it was? A. That's the way it looked to me. After I hit, it knocked him angling."

Under point 8, appellants suggest an irreconcilable conflict of jury findings requiring a new trial. The grounds therefor are not clear, the argument apparently being that under the record and undisputedly, such collision was due to negligence of some party to the lawsuit (an avoidable accident), and a verdict at variance therewith should be set aside. These findings are entirely consistent with aforesaid record. The jury could have well concluded

---

1. On this issue we also quote from appellants' brief, the testimony of Miller:

"Q. (By Mr. Burns) Did you honk your horn when you saw him? A. No, sir, I didn't.

"Q. You didn't have time, did you? A. Yes, I had plenty of time, but honking the horn at that man that far off, he

probably wouldn't have paid any attention."

In Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W.2d 938, cited by appellant in support of this point, the failure to sound horn was held to be a fact question on issues of both negligence and proximate cause.

that the collision was due to some other act or omission of third party defendant, pled but not submitted, though warranted by the evidence; for example, excessive speed on part of Watkins, his failure in matter of lookout or to yield the right-of-way. On facts quite analogous in Belzung v. Owl Taxi Company, Tex.Civ.App., 70 S.W.2d 288, 290, the Court said: "There is no merit in the contention, we think, that the jury's findings that the several acts of negligence (which they found directly caused, or contributed to, the injuries, was not the sole proximate cause of the injuries, was in conflict with their finding that the act of Beitel in turning to the left was not the direct or contributing cause of the injuries. It is not necessary that all the possible causes of an injury be those alleged in the pleadings of the parties. The jury may have been of the opinion *that there was some other cause which was a proximate cause of the injury, but that would not have been inconsistent with their verdict upon any of the special issues.*" (Emphasis ours.)

We regard as untenable appellants' charges of jury misconduct, the grounds therefor being reflected in the following conclusions: (1) Their discussion of the law as to right-of-way was fully justified by issue 17 relative thereto, in connection with Dallas City Ordinance in evidence and above quoted; (2) claim that the jurors in their deliberations made no distinction between the high degree of care imposed on defendant in contrast with the exercise of ordinary care incumbent upon third party defendant, is not substantiated; various jurors testifying that in answering the issues they looked back each time to the applicable definition and instructions; and (3) if there was any jury discussion of settlement between appellee and third party defendant, same was with reference to a conversation by all parties with the court whereby stipulations were entered into concerning damages to the taxicab, thus avoiding an issue thereon. The incident as narrated by one juror was denied by others; and even assuming such an occurrence, the resulting prejudice, if any, was likewise burdensome upon appellee.

All points of error upon thorough consideration are deemed without merit, resulting in affirmance of judgment.