James W. THOMAS, Appellant,

v.

MAGNOLIA CHEMICAL COMPANY OF TEXAS, Inc., Appellee.

No. 16584.

Court of Civil Appeals of Texas.

Dallas.

July 9, 1965.

Rehearing Denied Sept. 24, 1965.

Johnson, Guthrie, White & Stanfield and Robert M. Greenberg, Dallas, for appellant.

McCulloch, Ray, Trotti & Hemphill, Ross H. Hemphill and Donald J. Hahn, Jr., Dallas, for appellee.

WILLIAMS, Justice.

Action for damages resulting from destruction of a building by fire. James W. Thomas, alleging he was the owner and landlord of a certain building located in an industrial district in Dallas, Texas, brought this action against Magnolia Chemical Company of Texas, Inc., the tenant of the building by virtue of a written lease agreement, alleging that the defendant, its agents, servants and employees, had been guilty of various and sundry negligent acts which had proximately caused the loss of the structure by fire on August 29, 1963 and

that by virtue of said loss plaintiff had sustained damages in excess of $127,000. Defendant answered, denying the allegations of negligence and proximate cause, and affirmatively pleading that plaintiff, as landlord, had assumed the risk and hazard of the fire in question so that, pursuant to the doctrine of assumed or incurred risk, he was precluded from recovery.

Merchants Fire Assurance Company of New York filed its plea of intervention seeking to recover the sum of $99,550 which it had paid plaintiff pursuant to the terms of a fire insurance policy carried on the building in question.

The jury, in answer to special issues submitted, completely exonerated the defendant, its agents, servants and employees, of any acts of negligence which proximately caused the fire in question. The jury answered the assumed risk questions against the plaintiff and found that the fire was not the result of an unavoidable accident. Based upon this jury verdict the trial court rendered a take-nothing judgment against plaintiff.

Appellant's first three points on appeal from this judgment complain that there is no evidence, or insufficient evidence, to support the jury's answers to Special Issues 1, 4 and 8.

Consideration of these points has required us to examine the entire statement of facts. We have conducted our examination of the record in the light of the rules announced by our Supreme Court in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. In determining the "no evidence" question, which is one of law, we view the testimony favorable to the verdict to determine if there is any evidence of probative force to support same. In determining the "insufficient evidence" question, which is one of fact, we consider and weigh all of the evidence in the case to determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. The following is a summary of essential antecedent facts prior to the conflagration which is made the basis of this litigation.

The building in question, and which was destroyed by the fire, was owned by J. W. Thomas and leased by him to Magnolia Chemical Company of Texas, Inc. The tenant was engaged in manufacturing, storing and selling various types of chemicals as well as other products. The landlord was cognizant of the nature of the tenant's business at the time of the execution of the lease. The building was a rather large, one-story structure and divided into two separate areas. In one area, located in the corner of the building, the various chemicals were manufactured. This area was separated from the remainder of the building by a fire wall and a fire door. The largest section of the building was used for storage purposes and preparation of the products for shipping. Thomas, the landlord, admitted that during the term of the lease his office manager, Mr. McElyea, had made periodic visits to the premises in question and had inspected the same on a number of occasions. McElyea had never complained to him about the fact that the tenant's employees had smoked in the building nor had he made any complaint concerning the fire-fighting equipment or the manner of storage of chemicals on the premises. However, Thomas contended that McElyea's visits and inspection trips to the plant were for public relations purposes and not for the purpose of inspecting or making complaints concerning the manner of the tenant's use of the premises.

It was generally conceded by all witnesses that the tenant's employees habitually smoked in the building but such activities were generally confined to the larger storage area. As to the fire-fighting equipment available on the premises the testimony reveals that the tenant's employees had been given fire-fighting instructions with such equipment but it was undisputed that the two employees directly concerned with the fire had not been given such instructions

because they had been employed by the company a short time. There was testimony that the various chemicals and other products, in packaged form, which were in the storage area where the fire occurred were not considered flammable unless exposed to extreme heat. There was also testimony that although the employees habitually smoked in the storage area there had never been another fire prior to the one in question.

On August 29, 1963 Rayford D. Price, a young employee of appellee, was driving and operating a forklift truck in the storage area of the premises when the same ran out of gasoline and stopped. Price solicited the aid of another young employee, Melvin Trammell, to assist in refueling the forklift. As to what happened then, Price testified:

"Q. So, what did you do?

"A. Well, I had to put some gas in it, and it took two of us to put the gas in it, because the body—we had to raise the back end of it, not off the floor, but, you know, off the forklift where the gas tank cap was, had to have one to hold the lid open, because it had a spring on it. It would shut automatically, so we had to have some help to hold that open for me to pour the gas into it.

"Q. One man had to hold the spring back on the lid of the gas tank of the forklift?

"A. Yes, sir.

"Q. And the other man poke the gasoline can spout in the intake hole of the gas tank of the forklift?

"A. Yes, sir.

"Q. Who did you get to help you?

"A. Melvin Trammell.

"Q. Was he an employee of Magnolia Chemical?

"A. Yes, sir, he was.

"Q. And did he help you?

"A. Yes, sir, he did.

"Q. Did you get the gas can with the extra gas yourself?

"A. Yes, sir, I did.

"Q. And did you bring it up to the folklift?

"A. Yes, sir.

"Q. And what did Melvin Trammell do?

"A. He held the lid of the gas tank partly open for me while I put the nozzle into the gas tank.

"Q. Did you do that that day?

"A. Yes, sir.

"Q. Now, did the gas tank—the gas can that you had—did it leak around this nozzle that went into the tank, or not?

"A. Well, to the best of my knowledge, sir, it leaked around where it was joined onto the can.

"Q. The hose—

"A. Yes, sir.

"Q. —from the can?

"A. Yes, sir.

"Q. This hose you put into the gas tank of the lift leaked around the gasoline can?

"A. Yes, sir.

"Q. Did it make a puddle there on the floor as you poured it?

"A. Yes, sir, it did."

*   *   *   *   *   *

"Q. Now, as you were pouring the gasoline into the can this day of the fire, you testified just a minute ago it was leaking. Then what happened?

"A. Well, after we got the nozzle into the gas tank, Melvin Trammell

stepped back to light a cigarette, and I knocked the match out of his hand, and it went into the gas and caught the building on fire.

"Q. Which gas did it go into? That on the floor or in the can?

"A. On the floor, sir.

"Q. The puddle that had leaked?

"A. Yes, sir.

"Q. Did it catch fire immediately, explode, or what?

"A. Well, it just caught fire and kind of made a woosh sound, you know."

Price testified that the fire did not start after Trammell had lit the match to put to his cigarette but that it was only after he, Price, knocked the match out of Trammell's hand causing it to land in the puddle of gasoline on the floor, that the fire ignited. He said:

"Q. How far back did Melvin step before he lit the cigarette there from the forklift where it was being filled? You testified he stepped back.

"A. I wouldn't know exactly, sir. Looked to me like he stepped back one step.

"Q. When the match was struck, you saw Melvin Trammell actually strike this gopher match?

"A. Yes, sir.

"Q. Did any gasoline fumes ignite at that time?

"A. No, sir.

"Q. Did the gasoline can catch on fire at that time—

"A. No, sir.

"Q. —Rayford Price?

"A. No, sir.

"Q. Was any fire spontaneously ignited of any chemicals, or any gasoline, or any substance, when Melvin Trammell lit the match?

"A. No, sir.

"Q. And it wasn't until you moved and made a sweeping movement with your hand and knocked the match out of his hand, and then the course of the match fell and hit the gasoline on the floor that the fire started?

"A. Yes, sir.

"Q. Is that your testimony?

"A. Yes, sir."

As to the gasoline can used to refuel the forklift on the occasion in question there was testimony that the can leaked part of the time. The witness Younger, a former employee of the appellee company, testified that while the gasoline can leaked before the fire in question and smoking had occurred on the premises before, yet no fire had resulted prior to the one in question. He also testified that he had had experience with many cans and that most of them leaked.

Special Issue No. 1 submitted to the jury inquired whether the use by the defendant of the gasoline can in question, in refueling the forklift, was negligence on the part of defendant's employees. To the issue the jury answered "No".

In Special Issue No. 3 the jury was asked whether defendant's employees, in refueling the forklift, allowed any spilled gasoline to remain on the concrete floor, to which the jury answered "Yes". However, in answer to Special Issue No. 4 the jury said that such conduct was not negligence.

In Special Issue No. 6 the jury found that the defendant's officers and foremen permitted the defendant's employees to smoke in the area where the fire began. In Special Issue No. 7 the jury found that such conduct

was negligence. In Special Issue No. 8 the jury was asked:

"Do you find from a preponderance of the evidence that such negligence, if any you have found in answer to the preceding special issue, was a proximate cause, as defined herein, of the fire in question?"

To which the jury answered "No". The term "proximate cause" was defined to mean:·

"* * * a cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which the event would not have occurred; and, to be a proximate cause of an event it should be such as that it could have been reasonably anticipated and foreseen by a person of ordinary prudence in the exercise of ordinary care that the event, or some similar event, would have resulted from such cause as a natural and probable consequence, in the light of the attending circumstances."

■ From a review of the evidence we cannot agree with appellant that there is no evidence to support the jury finding to Special Issue No. 1 or that such answer is contrary to the great weight of the testimony. There was testimony, both pro and con, concerning the use of the gasoline can in question, as well as the use of another can. The jury could have easily concluded that the use of this particular can on the occasion in question was not negligence.

■ Neither can we agree with appellant that the answer of the jury in response to Special Issue No. 4 is without support in the evidence or contrary to the overwhelming weight of the testimony. While it is true that the evidence is uncontroverted that gasoline was allowed to remain on the concrete floor the testimony is conclusive that it had not been on the floor a sufficient length of time for anyone to have removed

it prior to the fire. The witness Rayford Price was asked by the attorney for appellant:

"Q. Did you have time to wipe up that gasoline that spilled before this match hit it?

"A. No, sir, I didn't."

■ In considering appellant's attack on Special Issue No. 8 reference must be made to Special Issue No. 6, and Special Issue No. 7, which both relate to the negligence on the part of appellee's officers and foremen in permitting "defendant's employees to smoke in the area where the fire in question began." While the jury found that it was negligence to allow smoking in the area yet, in answer to Special Issue No. 8, they found that such negligence was not a proximate cause of the fire in question. When we examine the entire evidence adduced, and especially in view of the definition of the term "proximate cause" as given by the court, we cannot sustain appellant's attack. It must be borne in mind that the testimony is undisputed that the fire did not commence when Trammell struck the match to light his cigarette. The actual cause of the fire was shown to be the act on the part of the employee Price in striking Trammell's hand and thereby causing the match to fly directly into the puddle of gasoline which had accumulated on the concrete floor. It was only then that the fire started. The jury could have easily concluded that while it was negligence to allow smoking in the area yet the real cause of the fire was not smoking but the act of Price in striking Trammell's hand. No question was submitted to the jury as to whether or not the act on the part of Price in striking Trammell's hand was either negligence or a proximate cause of the fire. There was ample testimony that while smoking was tolerated in the area in question there had never been a fire prior to the one in question. Moreover, in the light of the definition given by the court of the term "proximate cause" the jury was justified in concluding that the defendant, appellee herein, could not have

reasonably anticipated or foreseen that Price would strike Trammell's hand and knock the match directly into the gasoline.

As was aptly stated by Chief Justice Dixon, speaking for this court in Davidson v. Methodist Hospital of Dallas, Tex.Civ.App., 348 S.W.2d 400, a wrongdoer is not responsible for a consequence which is merely possible, but is responsible only for a consequence which is probable according to ordinary and usual experience. T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162; 30–B Tex.Jur. 216–220.

The issue of proximate cause was one of fact to be decided by the jury and we hold the answer thereto to be supported by competent testimony.

Having carefully examined the record in the light of the rules heretofore announced we have arrived at the conclusion that there was evidence, as well as sufficient evidence, to justify the answer of the jury to the special issues to which complaint is directed, and therefore overrule appellant's Points 1, 2 and 3.

By his fourth point, obviously multifarious, appellant contends that the court erred in permitting the appellee (1) to plead and (2) to offer proof on the defense that the landlord had incurred the risk of having his premises destroyed by fire, and (3) in submitting such a defensive theory which caused the jury to be confused. There are a number of reasons why each of these contentions must be overruled. Appellee, by way of affirmative defense, pleaded that appellant had incurred the risk of fire by leasing the premises to appellee with knowledge of the nature of the business and also by inspecting the premises from time to time and failing to make complaint concerning fire hazards. Appellant did not complain of these pleadings by special exception, motion or otherwise. Moreover, when appellee offered proof in support of this defensive plea of incurred risk appellant made no objection to such testimony and presents no bills of exception complaining of the ad-

mission of such evidence. We cannot agree with appellant that the record reveals that the jury was confused by the method of submission of the defensive theory.

Appellant argues in his brief that the doctrine of "assumed risk" or "incurred risk" as pleaded by appellee was not a proper defense under the facts of this case. We find it unnecessary to decide this question for the simple reason that the jury has exonerated appellee from any acts of negligence or proximate cause charged by appellant and which was essential for recovery by appellant. Therefore, the question of the propriety of submission of defensive issues becomes wholly immaterial. Any possible error in submitting such issues is harmless. Rule 434, T.R.C.P.

Appellant's fifth point complains of improper argument by appellee's counsel wherein he referred to appellant Thomas as a "rich landlord". We agree with appellant that such argument was improper but a complete review of the record fails to convince us that probable harm resulted. Rule 434, T.R.C.P.; Aultman, et al v. Dallas Railway & Terminal Co., 152 Tex. 509, 260 S.W.2d 596.

By his sixth, seventh and eighth points appellant contends that the court erred in refusing to permit him to call the witness Frank Younger as an adverse witness under Rule 182, T.R.C.P., and by allowing appellee to develop alleged improper evidence on cross-examination of such witness. He also complains that appellee was allowed to make an alleged improper argument based upon such evidence. We find no merit in any of these points and overrule them. Appellant called the witness Frank Younger under the adverse party rule. The court refused to allow appellant to examine the witness under that rule because it was shown that whereas Mr. Younger had been an employee of appellee at the time of the fire in question he was no longer employed by appellee at the time he was called as a witness. Appellant relies upon T. & P. Ry.

Co. v. Hagenloh, Tex.Civ.App., 241 S.W.2d 669, wherein the Court of Civil Appeals held that the witness Houghland could be properly called as an adverse witness even though he was no longer an employee of the defendant railway company. However, on appeal to the Supreme Court the judgment was reversed on other grounds and the Supreme Court expressly refrained from either approving or disapproving the ruling of the Court of Civil Appeals relating to this question. However, in the case of Dollahite-Levy Co. v. Phillips, Tex.Civ.App., 99 S.W.2d 688 the court in construing Art. 3769c, V.A.C.S. (now Rule 182 T.R.C.P.) said:

> "It would, in our opinion, be a dangerous doctrine to permit the adverse party to call as a witness some officer, agent, or employee of a corporation whose connection therewith had been severed, and allow the adverse party the benefit of asking leading questions such as are permitted on the cross-examination of a witness."

Appellant having called Younger as his witness, and being bound by the testimony of such witness, cannot complain now of the testimony given by the witness on cross-examination of appellee. Neither can he complain of argument made by appellee's counsel based upon the witness' testimony. Even if it could be said that any of the matters complained about in appellant's points constituted error we would hold that such error is harmless as it has not been demonstrated to us that such alleged errors reasonably or probably resulted in an improper verdict in this case. Rule 434, T.R.C.P.

In his final point, No. 9, appellant contends that the court erred in submitting Special Issues Nos. 17 and 20, being issues of specific negligence against defendant, because said issues did not restrict and confine the jury's consideration thereof to the acts and conduct of two specific agents, Trammell and Price. In submitting Special Issues 17 and 20 to the jury the court merely inquired whether "defendant's officers and agents" failed to do certain things. Appellant cites no authority to support his contention that such a method of submission was wrong and we have been unable to find any. It would seem to us that the method of submission is more favorable to appellant than to appellee since it does not restrict or confine the jury's consideration of such issues to any particular named employees. In any event, any error reflected by the submission of these issues was harmless in this record. Rule 434, T.R.C.P.

Having carefully examined all of appellant's points, and having carefully examined the entire record in this case, we are unable to find any reversible error reflected therein and accordingly the judgment of the trial court is affirmed.

Affirmed.