Howard F. OWENS et ux., Appellants,

v.

ACME OIL COMPANY et al., Appellees.

No. 206.

Court of Civil Appeals of Texas.

Tyler.

Nov. 10, 1966.

Rehearing Denied Dec. 8, 1966.

George L. Schmidt, Schmidt & Garrett, Houston, for appellants.

Timothy E. Kelley, George C. Chapman, Thompson, Knight, Simmons & Bullion, Dallas, for appellees.

DUNAGAN, Chief Justice.

Appellants, Howard F. Owens and his wife, Mrs. Marie Owens, plaintiffs below, brought this suit against appellees, Roy F. Calvert, individually, and the Acme Oil Company, a partnership comprised of Roy F. Calvert and F. A. Cotey, for injuries sustained by Mrs. Owens when appellee, Roy F. Calvert, backed his car into the front of an automobile driven by appellant, Mrs. Owens. Based upon jury findings that Mrs. Owens was guilty of certain acts of contributory negligence, judgment was entered for the appellees. Appellants appealed therefrom asserting what are commonly referred to as "no evidence" and "insufficient evidence" points of error.

The accident in question between appellant, Mrs. Marie Owens, and appellee, Roy F. Calvert, occurred on August 23, 1963, at approximately 1:00 p. m. The parties were on what Mrs. Owens described as a private road maintained by the Lake Ioni Club.

The road was a narrow, two-rut road in a wooded area near Palestine.

Mr. Calvert had a crew of men in the area servicing oil well pumping units and he had arrived in the area around 9:00 a. m. on the morning of the accident. He had two of his men working on a well close to where the accident happened, and he had stopped in the road waiting for them to finish so he could show them where the next well was.

Mr. Calvert was seated in his car facing the well where the men were working, which was a distance of approximately 200 yards. As the men started to leave their immediate location, Calvert feared that if they took a certain route, they would get stuck in the sand, which the evidence shows was 10 to 12 inches deep, so in an effort to get them to follow him, he motioned for them to come his way. After motioning, when he thought they understood, he closed the door to his car.

Mrs. Owens had pulled up to his automobile approximately 10 feet directly behind Mr. Calvert where he had been parked something like 45 minutes, and when she observed his motioning to his men, she erroneously thought he was waving her backwards. Actually, Mr. Calvert had not seen Mrs. Owens and never saw her nor knew she was behind him until the impact occurred.

Mrs. Owens gave the following testimony in response to questions propounded to her on direct examination:

"A Well, when I entered the club property, that road forms a crow's foot, and gives the name of all the people there, and the right hand road that leads down to our cabin and almost immediately after I hit this road, I saw Mr. Calvert's car down the road ahead of me, I'd say about 150 yards.

"Q And, what did you do when you saw his car in front of you?

"A Well, I just kept going on down the road and Mr. Calvert was stopped there, and whenever I saw Mr. Calvert was stopped there, I stopped behind him.

"Q How far behind him did you stop?

"A I couldn't tell you exactly how far behind him it was. But, I would say at least ten feet, because I could see Mr. Calvert's tail lights and everything.

"* * *

"Q All right. Now, when you came to a stop, what happened?

"A Well, when I came to a stop, Mr. Calvert was sitting in his car. He rolled his window down and stuck his hand out and he gave a signal this way (witness indicating with hand), and he rolled his window back up and put his car in reverse, his back-up lights came on and I assumed he wanted me to back up, because I didn't see anyone near us, so I turned around in my car to look out the back, in order that I could see my way clear and see if there was anybody behind me and how far I was going to back up in order to give Mr. Calvert room to get out. I figured he had gotten on the wrong road and he wanted to get back on the right road.

"Q And, what happened?

"A As I turned around and was looking out the back of the car, the next thing I knew Mr. Calvert had hit me. I felt an impact."

On cross-examination, Mrs. Owens testified:

"Q Did you ever see Mr. Calvert turn around and look at you?

"A No, sir, I did not.

"Q You did see his back lights go on?

"A Yes, sir.

"Q Did you see him start to move backward?

"A No, sir, I didn't see him start to move backwards, because when I saw his

backup lights come on and after he had given a signal, I turned around in my car, to see which way I was going to go to back out of his way.

"Q Incidentally, did you honk your horn at all?

"A No, sir, I didn't blow my horn.

"* * *

"Q Had you started moving backwards at all?

"A No, sir, I had not. I turned around to observe the view behind me, to make sure nobody was behind me, that the road would be clear for me to back up.

"* * *

"Q Had you shifted into reverse?

"A No, sir, I don't remember whether I did or not. I just could not say and be truthful about it."

Mrs. Owens did not offer any positive or direct testimony as to why she did not sound her horn immediately upon seeing that Mr. Calvert was preparing to move his car backward.

■■ It is our opinion that under the record as a whole the law imposed a duty upon Mrs. Owens to sound the horn under the circumstances shown and the question as to whether her failure so to do was "negligence," as that term was defined in the court's charge, was for determination by the jury. Buchanan v. Rose, 138 Tex. 390, 159 S.W.2d 109; Page v. Scaramozi, 288 S.W.2d 909 (Tex.Civ.App.), San Antonio, 1956, writ ref., n. r. e.; Tarry Warehouse & Storage Co. v. Price, 76 S.W.2d 162 (Tex.Civ.App.), Fort Worth, 1934, writ dism.

Mr. Calvert's testimony substantially confirmed the testimony of Mrs. Owens in regard to the events and circumstances leading up to the collision.

Mr. Calvert and Mrs. Owens were the only occupants of their respective automobiles. Mrs. Owens did have a little dog in the front seat with her. The record does not reflect that there were other witnesses to this accident.

The jury found that Mr. Calvert failed to keep a proper lookout and that such failure was a proximate cause of the collision in question and that Mr. Calvert did not back his automobile on the occasion in question at a speed in excess of that in which a person of ordinary prudence in the exercise of ordinary care would have backed the same, under the same or similar circumstances. However, the jury did find that Mrs. Owens failed to keep a proper lookout, which was a proximate cause of the collision, and that her failure to blow her horn was negligence and that such negligence was a proximate cause of the collision. The jury also found that "It was not the result of an unavoidable accident."

The appellants contend: (1) there was no evidence; (2) insufficient evidence to support the submission of either of the contributory negligence issues or the rendition of the judgment upon such findings by the jury; (3) and that the jury's findings of each of the contributory negligence issues were so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust. They further contend the trial court erred in refusing to disregard the jury's answers to said contributory negligence issues because such findings are supported by no evidence, or insufficient evidence, and are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust.

It is also appellants' contention that under the circumstances: (1) Mrs. Owens was under no duty to blow her horn; (2) that she could not legally be charged with anticipating or foreseeing, under the circumstances surrounding this accident, that Mr. Calvert would back his automobile without looking; (3) or waiting until the way

was clear before backing it; (4) therefore, the findings of the jury and the judgment of the court imposed upon her the impossible duty to keep a lookout ahead and to the rear at the same time while backing to clear Mr. Calvert's automobile, and the duty to anticipate and foresee that appellee, Roy F. Calvert, would not look to the rear before backing, or would not wait until her car was clear.

The court's charge contains the following instructions and definitions:

"By the term 'negligence', as used in this charge, is meant a failure to do that which a person of ordinary prudence, in the exercise of ordinary care, would do under the same or similar circumstances, or the doing of that which a person of ordinary prudence, in the exercise of ordinary care, would not do under the same or similar circumstances.

"By the term 'ordinary care' is meant that degree of care which would be exercised by a person of ordinary prudence under the same or similar circumstances.

"By the term 'proximate cause', as used in this charge, is meant a cause which in a natural and continuous sequence produces an event and without which the event would not have occurred; and to be a proximate cause of an event, it should have been reasonably anticipated and foreseen by a person of ordinary prudence, in the exercise of ordinary care, that the event or some similar event would occur as a natural and probable consequence. There may be more than one proximate cause of an event."

The Supreme Court of this state in Liberty Film Lines, Inc. v. Porter, 136 Tex. 49, 146 S.W.2d 982, said:

"Appellate courts are without authority to set aside jury verdicts, particularly on questions of proximate cause in damage suits, upon conflicting facts—the undisputed facts must be ample and clear, and the circumstances most exceptional to justify such action. Chief Justice Hickman, while on the Eastland Court, tersely stated the principle to which I refer, in Jones v. Gibson, Tex.Civ.App., 18 S.W.2d 744, 745: 'Undoubtedly, facts might exist in a given case which would be so conclusive in their nature as to establish, as a matter of law, that a certain act of negligence was the proximate cause of an injury; but such cases are indeed rare, and an examination of the authorities will reveal but few instances in which facts have been so interpreted.'"

See also Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, (S.Ct.) 1939; Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, (S.Ct.) 1957; Hipfner v. Anderson, 258 S.W.2d 357, 359, (Tex.Civ. App.) 1953, writ ref., n. r. e.

The Supreme Court in the case of Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946), stated:

"Contributory negligence barring a recovery as a matter of law is a conclusion sometimes compelled by the evidence, but such cases are relatively rare. Ordinarily, this question is for the trier of facts and only becomes a matter of law for the court when but one reasonable conclusion can be drawn from all the testimony. (Citing cases) It is obvious that had Day been more cautious, he would not have been injured. But whether the precautions he took amounted to due care was properly left to the jury. * * *

"* * * The conclusion is inescapable that he did exercise some care for his own safety. Whether his conduct met the requirements of ordinary care under all the circumstances was not for the court but for the jury to determine."

See also Irvin v. Ralston, 379 S.W.2d 111, (Tex.Civ.App.) 1964, n. w. h.

█  The rule is that, if the evidence is conflicting, the jury must decide the conflict; and if the evidence is not conflicting,

but reasonable minds might differ as to its effect, still a fact issue is presented. Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, (S.Ct.) 1942; Commercial Standard Ins. Co. v. Davis, 134 Tex. 487, 137 S.W.2d 1, 2, (Tex.S.Ct.) 1940; Plata v. Gohman, 359 S.W.2d 163, (Tex.Civ.App.) 1962, n. r. e.; Spears Dairy, Inc. v. Bohrer, 54 S.W.2d 872, 876, (Tex. Civ.App.) 1932, writ dism.

■■ It was within the province of the jury as the trier of the facts to pass upon the credibility of the witnesses and the weight to be given their testimony. Martin v. J. S. Hunt Lumber Co., Inc., 180 S.W.2d 956, (Tex.Civ.App.) 1944, n. w. h.; Joe D. Hughes, Inc. v. Moran, 325 S.W.2d 829, (Tex.Civ.App.) 1959, writ ref., n. r. e. The jury is the judge of the facts and circumstances proven and may draw reasonable inferences and deductions from the evidence adduced before it. Peck v. Century Concrete Products, Inc., 375 S.W.2d 459, (Tex.Civ.App.) 1964, writ ref., n. r. e.

Thus, some of the conclusions or inferences the jury could have made from the testimony of Mr. Calvert and Mrs. Owens are: (1) she knew Calvert was preparing to back up while she was at least ten feet away; (2) while she was aware of Calvert's location, he was looking directly ahead, not in her direction, and was not aware of her presence behind him; (3) that had Mrs. Owens honked her horn while Calvert was ten feet away from her, (which she had every opportunity to do) Calvert would have had his attention called to the imminence of any danger and would have avoided his backward movement; (4) that even the slightest warning by Mrs. Owens could have averted the collision; (5) that she took an unreasonably long period of time in looking to the rear for automobiles on this infrequently traveled trail; (6) that she did not make a reasonable and prudent assumption in assuming that Calvert's motioning to his men was a motioning for her to back up; (7) that she did not act as a reasonably prudent person by turning around to see if anyone was behind her instead of merely relying on a rear view mirror; (8) she was negligent in not looking to her rear immediately following Calvert's motioning, as he thereafter (after he thought his employees understood) closed the door on his car before he started any backward movement.

■ It seems to be well settled that ordinarily, the issue of proximate cause is a question of fact for the determination of the jury and its verdict is to be sustained. 40 Tex.Jur.2d 708, Sec. 165. Issues as to the liability of a party for his failure to sound his horn, so as to enable the other party to avoid the accident, are properly determined by the jury. 7 Tex.Jur.2d 470; Melton v. Tarrant Utility Company, Inc., 339 S.W.2d 379, (Tex.Civ.App.) 1960, n. w. h.; Texas Textile Mills v. Gregory, 142 Tex. 308, 177 S.W.2d 938, (S.Ct.) 1944; Temple Lumber Co. v. Living, 289 S.W. 746, writ ref.; Smith v. City Transp. Co., 245 S.W.2d 296, (Tex.Civ.App.) writ ref., n. r. e.; J. E. Stevens Funeral Home v. Busby, 336 S.W.2d 812, (Tex.Civ.App.) 1960, n. w. h.; Barron v. James, 198 S.W. 2d 245, 253, (Tex.Civ.App.) 1946, n. w. h. It has likewise been held that the issue of whether or not given acts constitute negligence is essentially a jury question. Plata v. Gohman, supra. Ordinarily, contributory negligence and proper lookout are questions for the jury. Dillard v. Griffin, Tex.Civ. App., 341 S.W.2d 696, 697, writ ref., n. r. e.; Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332, (1946); Industrial Oxygen Company v. Campbell, 405 S.W.2d 794, 796, (Tex.Civ.App.) 1966, n. w. h. Moreover, since Mrs. Owens was an interested party, the jury was not required to accept as the truth her testimony regarding the character of her lookout. Ward v. Larrimore, 290 S.W.2d 764, (Tex.Civ.App.) 1956, writ ref. n. r. e.

■ In an opinion written by Justice Pope while on the San Antonio Court of

Civil Appeals in the case of Plata v. Gohman, supra, it was said:

"* * * Even though one is not required to anticipate negligent conduct, he is not entitled to close his eyes to that which is plainly visible and which would have been observed by a person of ordinary prudence similarly situated. (cases cited)"

See also De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95, (S.Ct.) 1955; Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, (S.Ct.) 1958. It has also been held that the abstract statement that one may assume that others will act in a lawful and non-negligent manner is, because of its generality, misleading. Even if a person is not bound to anticipate unlawful or negligent conduct by others, he is nevertheless under a duty to use ordinary care to prevent injury to himself or to others. Martinez v. Hernandez, 394 S.W.2d 667, (Tex.Civ. App.) San Antonio, 1965, writ ref., n. r. e.; Tarry Warehouse & Storage Co. v. Price, supra.

In connection with the special issue inquiring as to whether Mrs. Owens failed to keep a proper lookout, the court gave the following definition: "By the term 'proper lookout' as used herein is meant such a lookout as would have been kept by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances." When the jury found from a preponderance of the evidence that "at the time and on the occasion in question" Mrs. Owens "failed to keep a proper lookout," it necessarily found that the plaintiff had a duty to keep a proper lookout for dangers which might reasonably have been anticipated and a breach of the duty. C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, (S.Ct.) 1966, and De Winne v. Allen, supra.

Under the record in this case, the jury in answering the "lookout" issues might reasonably have concluded that Mrs. Owens could have extricated herself from any hazard by (1) looking in the rear view mirror instead of turning around; (2) making a quick observation to the rear; (3) not turning her back on Mr. Calvert after observing his back-up lights; (4) not looking so long to the rear; (5) in glancing around to her back after the motioning by Mr. Calvert and then re-observing him before he started his backward movement. While she might not have been bound to anticipate in advance that Mr. Calvert would back without looking, we believe that it was for the determination of the jury as to whether or not Mrs. Owens was relieved of the duty to keep a proper lookout or sound her horn and if such failure was negligence and a proximate cause of the collision, especially since she had observed that Calvert had not looked back in her direction, and immediately prior to the collision had seen his back-up lights coming on that he was in the process of making a backward movement.

It is true the jury found Mr. Calvert guilty of negligence which proximately caused the collision. The question before us, however, is not whether the failure of Mrs. Owens to honk her horn or to maintain a "proper lookout" caused the collision, but whether such failure proximately contributed to it. Melton v. Tarrant Utility Company, Inc., supra; and Alexander v. Missouri, K. & T. R. Co. of Texas, 287 S.W. 153, (Tex.Civ.App.) 1926, writ dism.

Taking into consideration all the facts and circumstances surrounding this accident and particularly the undisputed fact that Mrs. Owens knew that Mr. Calvert was going to move his car backward, and from the time she first saw him that he never looked back toward her, nevertheless she turned and looked in the opposite direction to the rear of her car not sounding her horn to warn him of the imminence of any danger that could have avoided his backward movement and averted the collision, we cannot say as a matter of law that she was not negligent and such negligence

was not a proximate cause of the collision or proximately contributed to it.

As the evidence reveals, the circumstances surrounding this accident and the unusual manner in which it occurred have made it very difficult for this court to make what it deems to be a proper disposition of the questions here presented. However, under a careful review of all the facts and circumstances, under the reasonable-prudent-man standard of negligence, we hold the evidence presented fact issues for the jury to determine (1) whether or not the failure of Mrs. Owens to sound her horn immediately prior to the collision or immediately upon her knowledge that Mr. Calvert was preparing to move his car backward was negligence and a proximate cause of the collision; (2) whether or not Mrs. Owens failed to keep a proper lookout immediately prior to the collision and that such failure to do so was a proximate cause of the collision. J. E. Stevens Funeral Home v. Busby, supra; Melton v. Tarrant Utility Company, Inc., supra; Staten v. Monroe, 150 S.W. 222, (Tex.Civ.App.) 1912, n. w. h.

Consideration of appellants' points has required us to examine the entire Statement of Facts. We have conducted our examination of the record in the light of the rules announced by the Supreme Court in In re: King's Estate, 150 Tex. 662, 244 S.W.2d 660. In determining the "no evidence" question, which is one of law, we may consider only that evidence, if any, which viewed in its most favorable light, supports the jury findings and we must disregard all evidence which would lead to a contrary result. Thomas v. Magnolia Chemical Company of Texas, Inc., 394 S.W.2d 50, (Tex.Civ.App.) 1965, writ ref., n. r. e.; Biggers v. Continental Bus System, Inc., supra; Dillard v. Griffin, supra. In determining the "insufficient evidence" question, which is one of fact, we consider and weigh all the evidence in the case to determine whether the verdict is so against the great weight and pre-

ponderance of the evidence as to be manifestly unjust. We deem the evidence to be sufficient to support the submission of the various contributory negligence special issues and the jury's answers thereto, and that none of the answers made by the jury in response to said issues are so contrary to the weight and preponderance of the evidence as to be manifestly wrong and unjust. See Adams v. Houston Belt & Terminal Railway Company, 405 S.W.2d 838, 843, (Tex.Civ.App.) 1966, n. w. h.

We have considered all of appellants' points of error and believe them to be without merit and same are overruled.

The judgment is affirmed.