Mrs. Winifred **CARNEY**, a Feme Sole,
Appellant,

v.

The **KROGER COMPANY**, Appellee.

No. 15627.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

May 14, 1970.

Rehearing Denied June 18, 1970.

Miller, Gann & Perdue, Jim M. Perdue,
Houston, for appellant.

Fulbright, Crooker, Freeman, Bates &
Jaworski, Arno W. Krebs, Jr., Thomas P.
Sartwelle, Houston, for appellee.

COLEMAN, Justice.

This is a personal injury case. The trial
court directed a verdict for the defendant
at the conclusion of the plaintiff's case.
The only point presented relates to wheth-
er the evidence raised an issue of fact as
to negligence on the part of the defendant.

■ Only that evidence tending to raise
an issue of fact concerning negligence will
be recited or considered. White v. White,
141 Tex. 328, 172 S.W.2d 295 (1943).

This suit went to trial in December,
1969. On March 3, 1967, Mrs. Carney en-

tered defendant's store, procured a grocery cart, and pushed it along the front of the store to the far aisle. As she turned into the far aisle she slipped and fell onto her back. When she got up she saw that she had stepped in a puddle of cold cream. The puddle was located on the floor close to a gondola on which were displayed bottles of cold cream and other cosmetics. Two men helped her to her feet. One of the men reached into the puddle of cold cream and pulled out a small piece of glass. She did not see anything that would appear to be the remains of a bottle or jar. The only thing in the area that could possibly have been associated with the cold cream container was the small piece of glass.

This gondola was about ten feet from the courtesy booth where checks were cashed, money orders issued, and from which the general business of the store was conducted. It is next to the express cash register. There is a cashier on duty at all times. The courtesy booth is raised about six inches off the floor. The cashier stands. The cosmetics gondola, and the aisle where Mrs. Carney fell, are within the view of the cashier.

At the time of the accident the store manager was at the express register. He heard the cashier, Ann Wright, say something about a lady having fallen. He went to the scene of the accident. Mrs. Carney was then standing three or four feet down the aisle. He saw a substance on the floor about one foot or six inches into the aisle. The end of the gondola was about ten feet from the courtesy booth. Mrs. Carney told him that she had slipped and fallen.

Mrs. Wright testified that she was the cashier at the store in March, 1967. She did not recall anyone falling in the store on March 2, 1967, or on any other occasion. She said that if a bottle was dropped on the floor close by and it broke, she felt she would hear it. The closest place to the courtesy booth where something could fall or break, except for the express register,

would be the drug and cosmetic area. She did not remember seeing anything on the floor the morning of the accident.

The manager testified that it was the duty of either the porter or stock boy to clean up the mess and that he had never seen any customer pick up glass, or the remains of a broken container or bottle. Since he had been the manager of the store he had never seen a customer clean up a mess.

Lawrence Tyrone worked at the store at the time of the accident as porter and clerk. He testified that he had cleaned up something like Jergen's Lotion, cold cream, or hand cream around the northwest corner or edge of the drug and cosmetic counter two or three times, but he couldn't remember whether he did in March. He thought he remembered Mr. Forsyth telling him to clean up a mess there. When he has to clean up Jergen's Lotion or hand cream, he first picks up the glass "and stuff", and then mops with soap and water. Usually he puts the glass in a paper box and then puts it in the trash cans back of the produce department. His mop and water are in the back of the store. Ordinarily, "depending on how big a mess it is and what it is," before he went for his mop he would put a buggy, a piece of cardboard or something, over the mess to keep someone from stepping in it. The floor was something like marble and would be slippery with cold cream or Jergen's Lotion on it.

The buggies were kept some distance from the gondola. There is no evidence as to where a supply of cardboard would be found.

There is no evidence that the cold cream was placed on the floor by appellee's employees, or that it had been on the floor for such a period of time that it would have been discovered and removed by appellee's employees if ordinary care had been exercised. To recover, therefore, there must be evidence that appellee knew that the foreign substance was on the floor and willfully or negligently failed to re-

move it. H. E. Butt Grocery v. Johnson, 226 S.W.2d 501 (Tex.Civ.App.—San Antonio, 1949, error ref., n. r. e.).

■ There is no direct evidence that appellee knew that the cold cream was on the floor. This fact, as is the case with references to facts generally, may be established by circumstantial evidence. Employers Mutual Liability Insurance Company v. Strother, 358 S.W.2d 753 (Tex.Civ.App.— Waco 1962, error ref., n. r. e.).

The burden of the trial court in such a case was defined in the leading case of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898), where the court said:

"From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation falling short of being 'any evidence', and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force.

"If it so determines the law presumes that the jury could not 'reasonably infer the existence of the alleged fact' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' * * *"

■ One inference cannot be based upon another inference. Texas & P. Ry. Co. v. Brown, 142 Tex. 385, 181 S.W.2d 68 (1944). A circumstance shown by direct evidence is a fact proved, and not one inferred, in applying the rule against pyramided inferences. Craycroft v. Crawford, 285 S.W. 275 (Tex.Com.App.1926, rehearing den. 287 S.W. 244). Several conclusions or inferences may be drawn from the same facts. Missouri-Kansas-Texas R. Co.

of Texas v. Sanderson, 174 S.W.2d 646 (Tex.Civ.App.1943, error ref.).

■ In an effort to prove that the store knew the cold cream was on the floor and negligently allowed it to remain unguarded, appellant produced these facts:

(1) The store manager saw the substance on the floor and concluded that it resulted from a broken glass;

(2) There was one piece of glass in the cold cream at the time of the fall;

(3) No other pieces of glass were near the cold cream or in the area;

(4) The cold cream was spilled near the gondola where cold cream and other cosmetics were displayed;

(5) The cashier would probably have heard the noise made by a jar of cold cream falling with sufficient force to break it;

(6) The cashier was ordinarily on duty at all times;

(7) It was the duty of the porter to remove broken glass and to clean up spilled cold cream;

(8) The porter had cleaned up spilled cold cream at the cosmetics counter two or three times over an unspecified period of time;

(9) The porter did not remember cleaning up on the occasion of this accident;

(10) The porter usually picks up broken glass first;

(11) He puts a cart or carton over the spillage and then disposes of the glass;

(12) He gets his cleaning equipment and mops up the spillage;

(13) The manager, over an unspecified period of time, had never seen a customer

pick up broken glass or clean substances spilled on the floor;

(14) The porter's cleaning equipment was kept at the back of the store;

(15) Broken glass would be deposited in the trash cans back of the produce department.

After considering these facts a reasonable person might conclude that a jar of cold cream fell to the store floor, and that the container broke open, and the contents spilled out. A reasonable person might also conclude that the porter discovered the broken bottle, and picked up the glass, but neglected to guard the dangerous condition while he disposed of the glass and got his mop.

A jury might conclude that the defendant knew of the dangerous condition at a time when, by the exercise of reasonable care, it could have warned its customers because the cashier saw the substance on the floor. This conclusion would be supported by (a) the fact that the cold cream and glass were on the floor near the cosmetics counter, (b) the testimony that such a crash would be heard from a distance of ten feet, and (c) the floor near the cosmetics counter was easily visible from the cashier's booth.

The jury might also conclude that the defendant knew of the dangerous condition because the porter saw it. This conclusion would be supported by a permissible inference that the porter picked up the glass. This inference might be drawn from the fact that only one piece of glass was found; that it was his job to clean up spilled substances; that he usually picked up the broken glass before getting the mop and water with which he cleaned up such substances.

The fact that the container was made of glass is supplied by the manager's testimony as to what he found on the floor: "* * * it was a lotion, hand lotion, that was on the floor, apparently a broken glass, * * *" The manager would be expected to know the products he sold and how they were packaged. He saw the amount of the lotion that was on the floor. His testimony was in the nature of a shorthand rendition of the facts and was given without objection. It is supported by the fact that a piece of glass was found in the substance.

The judgment is reversed and remanded.