**J. WEINGARTEN, INC., Appellant,**

v.

**Eva HOCHMAN, Appellee.**

No. 15962.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 19, 1972.

Rehearing Denied Nov. 16, 1972.

Vinson, Elkins, Searls & Smith, Raybourne Thompson, Jr., Houston, for appellant.

Brown, Kronzer, Abraham, Watkins & Steely, Houston, Ernest H. Cannon, John M. O'Quinn, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is a slip and fall case. After a trial to a jury, judgment was entered for the plaintiff in the sum of $57,554.96.

The jury found that plaintiff slipped in water; that the water was caused to be placed on the floor by employees of defendant; that such conduct was negligence and a proximate cause of the occurrence; that defendant should have known that the water was on the floor prior to the occurrence; that it failed to exercise ordinary care in not removing such water from the floor prior to the occurrence; that such failure was a proximate cause of the occurrence; that defendant failed to exercise ordinary care in not warning Eva Hochman of the presence of such water on the floor, and that such failure was a proximate cause of the occurrence.

Appellant contends that there was no evidence to support the answers made by the jury to Special Issues 2, 5, 6, and 8. There is no testimony that anyone saw an employee put the water on the floor, or that anyone saw the water on the floor prior to the accident. However, the facts necessary to establish a cause of action based on negligence may be proved by circumstantial evidence. Carney v. Kroger Co., 455 S.W.2d 329 [Tex.Civ.App.—Houston (1st) 1970, writ ref'd, n. r. e.].

Chief Justice Calvert, in his much cited article "No Evidence and Insufficient Evidence," 38 Tex.Law Review, 361, stated that the rule generally applied in determining whether there is more than a mere scintilla of evidence supporting a vital finding of fact is that if reasonable minds cannot differ from the conclusion that the evidence lacks probative force it will be held to be the legal equivalent of no evidence. He also pointed out that the courts view the evidence in its most favorable light in support of the finding of the vital fact, considering only the evidence and the inferences which support the finding and rejecting the evidence and the inferences which are contrary to the finding. He states that the vital fact may not reasonably be inferred from the facts proved where the finding can be supported only by piling inference upon inference. Significantly, he states:

" . . . There is a variation of this rule which, as the variation is sometime stated, is inconsistent with the rule. Opinions in some of the decided cases indicate that an inference contrary to a finding of a vital fact is considered

when the existence of the vital fact is essential to a recovery and the facts proved give rise to opposing inferences which are equally reasonable and plausible. In that situation it is said that a finding that the vital fact exists is purely speculative and a 'no evidence' point is sustained. It appears that the opposing inference is considered for the purpose of determining whether the necessary supporting inference may be drawn with 'reasonable certainty.' There would appear to be no necessity for the variation. The opposing inference is present and it does no harm to note its presence, but the basic reason for sustaining the 'no evidence' point is that the inference supporting the finding of the vital fact is not reasonably to be drawn from the meager facts proved."

These principles and rules must be applied to our review of the evidence in this case.

There is testimony that Mrs. Hochman slipped in a spot of water in the produce department of the defendant's store. The produce is sprinkled with water from a 2½ gallon sprinkler can. Some spillage can be expected.

Mr. Davenport, the produce manager, testified that he was in the storeroom at the time the lady fell and that prior to that time he had been stocking the wet rack, where the leafy vegetables are displayed. The produce is moved from the storeroom to the wet rack in a "ware truck." He had made several trips with this truck before she fell. All of the trips involved the wet produce. It took about two hours to stock the wet rack. He watered the entire wet rack after he "got it up." He had spent about half of his time that morning in the back working on unloading a truck. He brought his last loads to the wet rack after the time the store opened and that was what he was doing when the lady got hurt. He gets a heavy load on Thursday and it takes about half a day to put out the items for the wet rack. It is his busiest day for stocking produce. He had already watered

except for the front of the wet rack. The exotic vegetable and fruit rack is pretty much directly across from where the lady fell. After putting out the produce, he finished unloading the truck, then made out orders for the next day. He turned in these orders at 10:30 o'clock. After turning in his orders, he filled the front of the wet rack with exotic vegetables and fruit. He then watered these vegetables and fruit. The wet vegetables and soft fruit are brought in from the storeroom in wooden crates and baskets on a cart, and water leaks from these containers on occasion. It was about 10:50 o'clock when Mrs. Hochman fell. There were no customers in the produce department immediately after she fell. Ten or twelve people gathered around her. There were no employees in the produce department at the time.

As one enters the produce department from the front of the store the "dry" racks are on the left, toward the interior of the store. The "wet" rack is on the right, along the outside wall. There is a space of some 20 feet between these racks. Tables are located in this space leaving aisles on the left, the right, and between the tables. Mrs. Hochman fell in the left aisle near the dry rack. The most direct route from the storeroom to the wet rack is down the right aisle. There is testimony that the produce carts are pushed down the left aisle at times when the right aisle is crowded. When only one employee is servicing the produce department, he might push a cart loaded with wet produce or with soft fruits in between the tables and leave it there while he weighs produce for a customer.

From the evidence that one of defendant's employees was working in the general area at a task requiring the use of water, an inference that the water in which Mrs. Hochman slipped was spilled on the floor by the employee could reasonably be drawn. There are no opposing inferences to be drawn from this testimony.

There was testimony that customers spilled water on the floor at times. There was no evidence that any customer was seen in this area carrying water on that morning. In the consideration of the no evidence point this evidence would not be considered. However, if it could be considered reasonable to infer that the water was spilled by a customer, from the fact that customers have spilled ice, water, and cold drinks on the floor on previous occasions, and the fact that there were a number of customers in or near the produce department during the morning of the accident, an issue of fact is raised for the jury. The inferences are drawn from different facts.

There was testimony that the area was inspected by the store manager some five minutes before the accident. The produce manager said there were no customers in the area immediately after the accident. Just before the accident the girl having the duty of weighing produce for customers decided to take a break, which might indicate that few customers were in the area. Another employee testified that he had never seen a customer spill water in the area although he had seen them spill cold drinks. While it is possible that the water was spilled by a customer, in the absence of evidence that one or more customers were seen in the area near the time of the accident, it cannot be said that the inference that the water was spilled by a customer is as reasonable and plausible as is the inference that it was spilled by an employee who was working in the area with water near the time of the accident.

After a consideration of all the evidence we cannot say that the jury finding that the water was caused to be placed on the floor by employees of the defendant, which conduct was negligent and a proximate cause of the occurrence, is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

■ Appellant asserts that the trial court erred in allowing appellee to call Darrell Levine and Larry James as adverse witnesses pursuant to Rule 182, Texas Rules of Civil Procedure. Larry James was working in the produce department in the store in question on the date of the accident and remains an employee of appellant. Darrell Levine was an employee with similar duties at the time of the accident, but was not an employee on the date of the trial. It is not shown positively that either of them was on duty at the time of the accident. There is some evidence that one of them was working on the morning of the accident. If so, it was possible that he spilled the water on the floor. Under these circumstances the trial court did not err in permitting James to be called as an adverse witness. Carey v. Furrs, Inc., 455 S.W.2d 786 (Tex.Civ.App.—Amarillo 1970, writ ref'd, n. r. e.). Levine was not an adverse witness since he was no longer employed by appellant. Dollahite-Levy Co. v. Phillips, 99 S.W.2d 688 (Tex.Civ.App.—Amarillo 1936, writ dism'd); Thomas v. Magnolia Chemical Company of Texas, 394 S.W.2d 50 (Tex.Civ.App.—Dallas 1965).

Appellant contends that the testimony of these witnesses was binding on appellee and that, accepting portions of their testimony as true, to the effect that there was no watering between the opening of the store and the accident, there could be no basis for a judgment against appellant. We do not concede that the rule goes so far as appellant argues, but in any event these witnesses were talking about custom, rather than the facts as to the occurrences of the morning of the accident. There was other evidence purporting to narrate the facts as to when the watering operations were carried out on the morning in question. In addition James and Levine testified as to circumstances under which an employee might cause water to be placed on the floor other than while watering the wet rack. The error of the trial court in permitting Levine to be called as an adverse witness was not one which was calculated to cause and probably did cause the rendition of an improper judgment,

and, therefore, would not constitute reversible error under Rule 434, T.R.C.P. McCarthy v. City of Houston, 389 S.W.2d 159 (Tex.Civ.App.—Corpus Christi 1965, writ ref., n. r. e.).

Finally, appellant contends that the trial court erred in overruling certain motions for mistrial. It is appellant's contention that the attorney for appellee informed the jury of the effect of their answers to the special issues on proper lookout on three occasions, once during the voir dire examination of the jury panel, and twice during the jury argument. On voir dire the attorney for plaintiff pointed out to the jury that in its pleadings the defendant asked that the plaintiff take nothing as a result of her injuries, and said that she did not keep a proper lookout. In his final argument, the attorney for plaintiff told the jury that appellee's attorney wanted the jury to answer the lookout issue "in his favor—'We do.' . . . But you are going to put in, 'We do not,' because nobody ever saw the water before she fell in it . . ." Later he argued that Issues 10 and 11 must be answered, "We do not." Appellee promptly moved for a mistrial in each instance.

The conduct of the attorney for the plaintiff in repeating the contentions of the defendant during voir dire examination of the jury panel cannot be condemned on the ground that it constituted misconduct in that the jurors were thereby informed of the effect of their answers to the special issues to be submitted to them at the conclusion of the case. Intelligent jurors are likely to learn the positions of the respective parties on various questions arising during the course of a trial. They will expect a lawyer to take positions favorable to his client. It is probable that most jurors think they know the effect of their answers to the special issues, and that they are usually correct. The purpose of the special issue submission is not to blindfold jurors, but to direct their attention to the controlling questions in a case. So long as

an argument or comment is not a blatant appeal to the jury to answer an issue in a particular manner in order that a particular result might be achieved, the appellate court should be slow to order a reversal. Ordinarily harm will be difficult to demonstrate. Texas Employer's Insurance Ass'n v. Mendenhall, 334 S.W.2d 850 (Tex.Civ.App.—Ft. Worth 1960, writ ref'd, n. r. e.).

We find no impropriety in the jury argument. The argument concerning the answers to be made to the issues was properly related to the evidence. Connor v. Heard & Heard, 242 S.W.2d 205 (Tex.Civ.App.—San Antonio 1951, writ ref'd, n. r. e.).

Affirmed.