SUSAN H. SHOEMAKER ET AL. V. TEXAS & PACIFIC RAILWAY
COMPANY.

Decided June 28, 1902.

**1.—Railway Company—Negligence—Death—Accident—Evidence Raising Issue.**

Where the particular thing causing the injury is shown to have been under
the management of the defendant or its servants, and the accident is such as
in the ordinary course of things does not happen if those who have the manage-
ment use proper care, it affords reasonable evidence, in the absence of explana-
tion, that the accident arose from want of care. See evidence held sufficient to
require the submission to the jury of the issue of negligence in an action against
a railway company for the death of persons whose bodies were found on and
near the track, although there was no direct proof as to the manner of their
death and the circumstances attending it. (Stephens, Associate Justice, dis-
senting.)

**2.—Same—Duty of Lookout—Persons on Track.**

Where it appeared that two boys were killed by a train while walking along
the railroad track at night at a point that had been used day and night for
years by the people of that community, a condition of things was shown which
required those in charge of the engine to keep a lookout ahead as a matter of
ordinary care, especially where the train was making unusual speed.

**3.—Same—Master and Servant—Notice of Servant's Unfitness—General Reputa-
tion.**

While general reputation of a servant's unfitness to fill a position is not
sufficient to bring home notice thereof to a fellow-servant, it will suffice to affect
with notice the master whose duty it is to inquire and keep constant watch over
such matters, and therefore evidence that it was the common talk among rail-
road men that an engineer's eyesight was defective was admissible to charge the
company with notice of that fact.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

*E. B. Ritchie* and *D. M. Alexander,* for appellants.

*B. G. Bidwell,* for appellee.

HUNTER, ASSOCIATE JUSTICE.—This suit was brought in the Dis-
trict Court of Parker County by appellee, in which she joined her in-
sane husband, who had no guardian, on September 20, 1900, to recover
damages from appellee railway company occasioned by the alleged negli-
gent killing of her unmarried minor sons, aged respectively 18 and 19
years. The acts of negligence alleged were that the engineer in charge
of the train which killed her sons was unfit and incompetent to perform
his duties as such by reason of defective eyesight, being nearsighted, of
which the defendant company had notice, and by reason of those in
charge of the engine failing to ring the bell or blow the whistle or
give other warning of the approach of the engine at the said crossings,
and failing to keep a lookout ahead and to use all the means within
their power to avoid the injury after discovering the peril of the young
men on the track, and after they, by the use of ordinary care, might have
discovered them and their peril,—the crossings and track where they

were killed being a place commonly used by pedestrians and where persons might reasonably be expected.

The defense was not guilty and contributory negligence in going upon the track and remaining and trespassing thereon.

The court charged the jury to find a verdict for the defendant railway company, which they did, and upon which judgment was rendered and this appeal taken therefrom. This peremptory charge is assigned as error.

The evidence disclosed by the record was to the effect that on the night of June 4, 1900, the two boys left their mother's home about 300 yards south of the appellee's railroad track, about ten minutes after 10 o'clock, and went towards the railroad in search of a brother-in-law who had gone that afternoon to Milsap, a station on appellee's road about two miles westward. No one ever saw them alive after that. They were found next morning about 8 o'clock, one on and the other near the railroad track between two private crossings in the pasture on appellant's premises where the right of way was fenced, dead and mangled. Their limbs and fragments of their clothing, as the evidence tends to establish, were scattered westward for some distance along the track.

Mr. J. Y. Burke, appellee's roadmaster, but introduced by appellant, testified: "As shown by this train sheet there were seven trains that passed along that track that night. No. 5, on which Waldron was engineer, passed there about 11 p. m going west; No. 91 passed at 7:40 p. m. going west; first 13 passed at 1:30 in the morning going west, and second 13 at 5:40 in the morning; No. 6 east bound passed there at 5:15 a. m.; No. 92 east bound at 10:45 p. m. My recollection is that No. 92 made Lambert for No. 5. Lambert is seven miles east of Milsap. No. 14 was going east and passed there at 7:45 in the morning. If the 11 o'clock west bound passenger train killed these boys, then the 1:30 a. m. train, 5:40 a. m. train, 5:15 a. m. train, and the 7:45 a. m. train all ran over their bodies. None of these engineers reported to me of seeing these bodies there on the track, and I talked with every man that passed there; they said they never saw a sign. That is a straight track there, and with a good headlight there ought to be nothing to prevent anybody from seeing an object of any size. The only man that ever told me that he saw anything that night that looked like a man was Waldron. He said those two men he saw stepped off the track right by the bridge." In another part of his testimony he says the bridge is a half mile from where the injury occurred, and also makes the time of passing of trains above given apply to Milsap, and not to the place where the injury occurred. He also testified: "I quote all these facts from the train sheet, and know it is practically correct from the fact that I investigated it before I even looked at the train sheet at all. I took the register here [meaning Weatherford] and talked to the men about what time they passed there [meaning Milsap], and that is practically correct."

The west-bound passenger train passed through the premises a little

before 11 o'clock that night. Engineer Waldron was in charge of the engine, and the evidence, though conflicting, tends to prove that his eyesight was imperfect,—that he was nearsighted. Pitts was fireman. Neither testified in the case, nor did the conductor or any brakeman; in fact the defendant company offered no evidence whatever. The track was straight and the view unobstructed eastward and westward from the place where the bodies were found for more than a quarter of a mile. It was down grade going westward from there to Milsap and west-bound engines worked no steam along there,—ran very fast and made little noise. The evidence of Mr. Burke, the roadmaster of appellee, tends to prove that Waldron's west-bound passenger train passed Milsap about 11 o'clock that night. It passed the east-bound freight, which passed Milsap at 10:45 p. m., at Lambert. The rate of speed which this freight train made is not in the record, but at fifty miles an hour, which is probably unusual speed for freight trains to make in Texas, it would require about eight minutes to reach Lambert, and this would allow the west-bound passenger train about seven minutes to run from Lambert to Milsap, a distance of seven miles, which would indicate an average speed of about sixty miles an hour, and probably greater, while passing through appellant's premises. There is evidence tending to prove that this train did not blow the whistle or ring the bell at the crossings named that night. If it might be inferred that the boys saw and heard the train bearing down upon them, not knowing of the unusual and extraordinary speed at which it was coming, being squarely in front of it, they, though in the exercise of ordinary care, might have miscalculated the time required by the train to reach them and were thus caught, as was Dr. Wagley in the case of Railway v. Wagley, 40 Southwestern Reporter, 538. This unusual speed would be calculated to deceive ordinarily prudent people standing, crossing, or walking in front of the train or about to cross the track.

The evidence also tended to prove that the track through the premises had been used day and night for years by the people of that community in going to and from Milsap and to and from Newbury church, about one and a half miles east of the premises, and therefore tended to prove a condition of things which required those in charge of the engine to keep a lookout ahead as a matter of ordinary care, especially when the train was making such an unusual rate of speed. Railway v. Simpkins, 64 Texas, 615; Railway v. Hunt, 67 Texas, 474; Railway v. Watkins, 88 Texas, 20; Shiflet v. Railway, 18 Texas Civ. App., 57. The evidence also tended to prove that the moon was shining brightly and that the headlight on Waldron's train was very good that night, so that if it was the duty of the engineer and fireman to keep a lookout for people on the track at that place, the circumstances of the killing would tend to establish negligence on their part in not seeing the boys on the track, or, if they saw them, in not doing all within their power, consistent with safety to themselves and the train, to avoid the injury. The court

excluded evidence that the train could have been stopped within 150 feet. This was error also.

From this statement of the facts it will be seen that there is direct evidence of circumstances which would authorize the jury to find that the west-bound passenger train killed the boys: First, straight unobstructed track; second, that persons were accustomed to using it night and day and had been for years; third, Waldron, the engineer, had defective eyesight; fourth, *that* train failed to blow the whistle for the crossing a few hundred yards east of the place where the boys were killed; fifth, the righ rate of speed it was making; sixth, the moon shone brightly and the headlight was very good that night; seventh, Waldron admitted he saw two men on the track, though he claims they were a half mile from the place of injury, but the jury might not have believed the latter part of this statement, and might have found that they were the deceased. If this train did kill them, then the strong light from the moon and the headlight, and the straight track, enabled the engineer to see them on the track, and he must have done so if he kept a lookout as he should have done. If he failed to see them at such a place under such circumstances, the inference is strong either that it was because he was negligent in not looking out for such persons, or the company was negligent in employing and retaining in its service an engineer who could not see well.

The suit was filed September 20, 1900, and the trial occurred on the 1st day of November, 1901, nearly fourteen months afterwards. The engineer died only a few months before the trial. The evidence indicated that the fireman was still in the service of the company, but the testimony of neither of these witnesses, by deposition or otherwise, was produced by defendant.

We reversed the judgment and remanded the case of Shiflet v. Railway, supra, a case in some respects quite analogous to this, where Chief Justice Tarlton laid down the rule that, "if the course of legal evidence was such as tended to support the averments of plaintiff's petition it became the duty of the judge trying the case to submit the issues of fact to the jury, even though, had they returned a verdict against the defendant, he should have felt constrained to set aside the verdict on a motion for a new trial." Citing Fitzgerald v. Hart, 17 S. W. Rep., 369; Bowman v. Brewing Co., 43 S. W. Rep., 808; McCray v. Railway, 34 S. W. Rep., 95.

It would be improper to discuss the evidence contained in the record any more than we have felt compelled to do as above, but will call attention to the rule in such cases laid down by Chief Justice Gaines in Washington v. Railway, 90 Texas, on page 320: "But while the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that without negligence it would not have occurred (Railway v. Suggs, 62 Texas, 323), where the particular thing causing the injury has been shown to be un-

der the management of the defendant, or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care. Scott v. Docks Co., 3 H. & C., 569; Transportation Co. v. Downer, 11 Wall., 129. In such a case the question of negligence should be submitted to the jury."

Applying the above rule to the facts of this case, we think it should have been submitted to the jury upon the theory that if they believed from the evidence that the place where the boys were killed was one where people were accustomed to crossing, walking along, and being on the track both day and night, and that this fact was known to the employes of defendant in charge of the trains it was their duty to keep watch over the track in front of the engines at such place in order to discover anyone who might be on the track and avoid injuring them, if by the use of the means within their power they could do so without injury to themselves or to the train, and failing to do so, the defendant would be guilty of negligence.

Again, if the west-bound passenger train killed the boys, and the engineer in charge of the engine had a defective eyesight of which the company had notice, or which by the use of ordinary care it could have known, and by reason of which the injury occurred at a place where it was the duty of the engineer to keep a watch over the track in front of his engine, as before explained, then the defendant would be guilty of negligence, and would be liable whether the engineer saw the boys or not, and even though the boys were guilty of negligence in going or being upon the track. This principle applies to the facts of this case, because the railroad company has no right to kill persons who negligently go upon its track if they are seen by those in charge of the engine in a perilous position in time, by the use of every means in their power consistent with safety to themselves and the train, to save them. But if the engineer is blind he can not see them, or if his eyesight is defective he would probably not see them, and the negligence would consist in retaining the engineer in its service after it knew, or by the use of ordinary care could have known, of his defective eyesight. And in this connection we think the court also erred in excluding the evidence of Huddleston, offered to prove that it was commonly known and was the common talk among railroad men and others that Waldron had defective eyesight. This evidence was excluded upon the ground of its immateriality, but it is material, we think, on the question of whether the railroad company had notice of his defective eyesight. General reputation of a servant's unfitness to fill a position, while insufficient to bring home notice to a fellow servant working with him, yet, because it is the duty of the master to inquire and keep constant watch over such matters, is sufficient to affect him with such notice. Railway v. Johnson, 34 S. W. Rep., 186; same case, 35 S. W. Rep., 1042. A railway com-

pany owes this duty to persons standing or walking on its track at places which it has long and continuously allowed the public to use.

We therefore conclude that the learned judge erred in instructing a verdict for the defendant company, and for this error, and for excluding the evidence aforesaid, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

CONNER, CHIEF JUSTICE.—Without being able to assent to all that is said in the opinion of Judge Hunter, I nevertheless agree to the disposition made of the appeal as announced by him.

In the case of Lee v. Railway, 89 Texas, on page 588, our Supreme Court, in an opinion by Associate Justice Brown, say: "Negligence, whether of the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party in doing the act in question; in other words, to authorize the court to take the question from the jury, the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it."

The rule so announced is reiterated and approved in Choate v. Railway, 90 Texas, 88. In view of which, and in view of the different conclusions drawn from the facts by my distinguished associates, it is perhaps quite natural that I hesitate to say that the evidence is such that there is no room for ordinary minds to differ in the conclusion to be drawn therefrom. However, I do not wish to be understood as passing upon the sufficiency of the evidence to sustain the theory that the killing was by the passenger train rather than by some one of the other west-bound trains that night. If this be assumed, the evidence recited in Judge Hunter's opinion would seem amply sufficient to raise the issue of negligence on appellant's part. It may be said that the evidence fails to exclude contributory negligence on the part of the deceased boys. Is this required of appellants under the circumstances? There was evidence tending to show that the boys were not trespassers upon the track, and the record is absolutely silent as to the circumstances immediately attending their death. If licensees, the mere fact that the boys went upon the track does not conclusively, or as a matter of law, establish negligence on their part proximately contributing to their death. Railway v. Phillips, 37 S. W. Rep., 621; Law v. Railway, 4 Texas Ct. Rep., 552; Railway v. Watkins, 29 S. W. Rep., 232. The burden to establish this purely defensive matter was upon appellee. At least evidences of the dreadful collision and result must have been left upon the engine or train causing the same; the power to produce the operatives of such train and hence perhaps to afford an explanation of the circumstances is with appellee. So that in the absence of an explanation and of effort to explain on the part of the appellee company, it would seem that in

the interest of human life the evidence was such as to require the sub-mission of the issue of negligence to the jury regardless of the particular train by which the boys were killed. Washington v. Railway, 90 Texas, 320, and authorities there cited. See also the rule in this State as to the burden of proof, and the reasons therefor in cases of property de-stroyed while in possession of railway company as shipper, and in cases of injuries to a passenger. Ryan v. Railway, 65 Texas, 18, et seq.; Rail-way v. Smith, 74 Texas, 278.

Stephens, Associate Justice, dissents upon the ground that the evi-dence utterly failed to make a case for the jury, but left all to specula-tion and conjecture as to how the accident occurred or who was to blame for it.