The ESTATE of Earl ARRINGTON et al., Appellants,

v.

Eugene Devan FIELDS et al., Appellees.

No. 1131.

Court of Civil Appeals of Texas, Tyler.

Feb. 15, 1979.

Rehearing Denied March 15, 1979.

174

John A. Berke, Jr., Berke & Associates, Laron D. Robinson, Leebron & Robinson, Houston, for appellants.

Joseph D. Jamail, Nat B. King, S. Gus Kolius, Jamail & Kolius, Frank G. Jones, Fulbright & Jaworski, Ralph Shepherd, Houston, for appellees.

SUMMERS, Chief Justice.

This is a case in which suit was filed seeking recovery for injuries and damages arising from an incident in which Eugene Devan Fields, plaintiff below, was shot during an altercation with Earl Arrington, a security guard employed by Executive Security Systems of America, Inc., both defendants below. At the time in question, Earl Arrington, hereinafter "Arrington," was on duty as a security guard on the premises of a convenience store which was owned and operated by Stop N'Go Markets of Texas, Inc., hereinafter "Stop N'Go." Prior to trial, plaintiff took a nonsuit as to Stop N'Go, but Stop N'Go remained in the lawsuit as a cross-defendant.

The primary theory of recovery relied upon by the plaintiff was based upon a cause of action of negligent hiring. Plaintiff alleged that Arrington willfully, intentionally, and without provocation assaulted and shot Fields, a customer of the Stop N'Go convenience store where Arrington was on duty as an armed security guard. In addition, plaintiff alleged that Arrington's employer, Executive Security Systems of America, Inc., hereinafter "Executive," was negligent in hiring Arrington as an armed security guard when Executive knew or in the exercise of reasonable care should have known that he was unfit for such a position and thereby created an unreasonable risk of danger to the patrons of the Stop N'Go. It was contended that such actions constituted not only negligence but gross negligence, all of which was a direct and proximate cause of the injuries and damages suffered by Fields.

It is undisputed that on the night of September 17, 1974, Arrington was on duty as an armed security guard at a Stop N'Go convenience store. He was in uniform, wore a badge, and was armed with a .38 caliber handgun. Sometime between 11:15 p. m. and 12:30 a. m., Fields entered this convenience store to make some purchases. As Fields was standing near the check-out counter, Arrington thought he saw Fields shoplift a tortilla from a warming oven. Arrington asked the store clerk to hand him his nightstick and proceeded to approach Fields. Arrington stopped Fields and subjected him to a search, but the search failed to uncover any stolen items or weapons. After the search, some words were exchanged between Fields and Arrington. It is undisputed that Fields did finally leave the store with his groceries. Arrington admitted that at this point Fields was not a threat to the store clerk, the store, or Arrington himself. However, Arrington then proceeded to follow Fields out the door. The evidence is conflicting as to what transpired outside the store. There were no eyewitnesses.

Arrington testified that he stepped outside the store, nightstick in hand, in order to be sure Fields was not up to some mischief. Once outside, Fields jumped out from behind some telephone booths and tackled him, knocking him back through the

glass doors of the store. Arrington stated that he attempted to defend himself with his nightstick but that Fields tried to grab Arrington's still holstered gun. During the scuffle, the handgun discharged and struck Fields in the lower abdomen. Arrington testified that his gun never left his holster. According to Arrington, Fields stepped back after being shot, picked up his groceries, and started to walk away. He had to then kick Fields down in order to keep him from leaving before the police and ambulance could arrive.

Fields, on the other hand, gives a different description of the events outside the store. He testified that upon leaving the store Arrington assaulted him from behind with the nightstick. Fields stated he attempted to leave the premises, but Arrington continued to beat him. Finally, Arrington pulled out his gun and, while threatening to kill him, shot Fields. Fields fell to the ground whereupon, Fields said, Arrington continued to curse and kick him. Fields contends he then lost consciousness.

Arrington had been hired by Executive approximately four months prior to the incident here in question. Arrington had applied for the job and was put to work the next day. Although his employment application answered "yes" to the question "Have you ever been arrested?," no answer was given to the next question concerning the type and disposition of arrest. Arrington testified that no one had ever questioned him concerning his record. Likewise, an application question concerning experience with handguns was left blank. According to Arrington, he merely signed the application in blank and was not aware of who filled it out.

Executive's management personnel agreed that a person with a criminal record should not be hired as a security guard and recognized the need for thorough screening of potential employees. They admitted that a person with a long criminal record was unacceptable as an armed security guard. However, Executive's management personnel were unaware of Arrington's lengthy criminal record and nothing in his personnel file demonstrated any further investigation into his background.

Arrington testified that he was given no instructions or training when Executive issued him a handgun. Executive's management described Arrington's training as "on-the-job" training which consisted of assigning him to night watchman duties at construction sites. In addition, Executive contended Arrington was given an undetermined amount of classroom instruction.

The case was tried to a jury. In response to special issues submitted, the jury found that Executive failed to exercise reasonably prudent care in its investigation of Arrington's background prior to his employment and placement as an armed security guard, that such was a proximate cause of the injuries suffered by Fields, and that this constituted gross negligence. (Special Issues Nos. 1–3) The jury also found that Arrington failed to act as a reasonably prudent security guard before and at the time Fields was shot, that such was a proximate cause of the injuries suffered by Fields, and constituted gross negligence. (Special Issues Nos. 4–6) In addition, the jury refused to find that Fields had provoked Arrington to the point that Arrington's actions thereafter were that of a reasonably prudent guard or that Arrington acted in self-defense. (Special Issues Nos. 7 and 9) On the basis of the jury findings, the district court rendered judgment in favor of Fields against Arrington and Executive, jointly and severally, for $500,000.00 actual damages, against Executive for $200,000.00 exemplary damages, and against Arrington for $100,000.00 exemplary damages. Arrington died after entry of judgment and his estate was substituted in his stead. From this adverse judgment, Executive and Arrington have perfected this appeal predicated upon fifteen points of error.

. We will first address the complaints raised by appellants' points of error nos. 3, 4, and 5. The primary thrust of appellants' contention is that the trial court erred in allowing plaintiff to proceed to trial with his negligent hiring cause of action. These points of error complain of the submission

of Special Issues Nos. 1, 2, and 3 which dealt with whether Executive was negligent in employing Arrington, whether such employment was a proximate cause of Fields' injuries, and whether such employment constituted gross negligence on the part of Executive. Appellants argue that these issues were rendered moot because Executive had stipulated that at the time in question in this lawsuit, Arrington was within the course and scope of his employment for Executive.

■ Appellee Fields responds by contending that appellants failed to preserve any error, if any existed, in the submission of Special Issues Nos. 1, 2, and 3. We agree. Appellants complain that the trial court erred in submitting these special issues. However, neither the transcript nor the statement of facts contain any objections made by appellants prior to the submission of these special issues to the jury. The transcript does contain appellants' amended motion for new trial in which these complaints are raised. Rule 272, T.R.C.P., provides that all objections and exceptions to the court's charge not presented before the charge is read to the jury shall be considered as waived. The law is well-settled that such objections may not be raised for the first time on motion for new trial or appeal. *Volkman v. Eakman,* 496 S.W.2d 752, 757 (Tex.Civ.App.—Fort Worth 1973, ref'd n. r. e.); *Whitfield v. Shames,* 484 S.W.2d 615, 616 (Tex.Civ.App.—Amarillo 1972, ref'd n. r. e.); *Wilson v. King,* 311 S.W.2d 957, 959 (Tex.Civ.App.—Austin 1958, ref'd); McDonald, Texas Civil Practice, Vol. 3, sec. 12.27.2, pp. 402–3. The burden is upon appellant to see that a sufficient record is presented on appeal so as to preserve any error upon which he wishes to rely. Rule 413, T.R.C.P.; *Bituminous Casualty Corporation v. Moore,* 396 S.W.2d 249, 251 (Tex.Civ.App.—Tyler 1965, ref'd n. r. e.). Appellant's points of error nos. 3, 4, and 5 are overruled.

We will next address the complaint raised in appellants' second point of error. Appellants contend that the trial court erred in admitting into evidence plaintiff's exhibit no. 2, Arrington's criminal record. Plaintiff's exhibit no. 2 showed that Arrington had a total of seven prior criminal convictions resulting in four trips to the penitentiary. The convictions included burglary with intent to commit theft, grand larceny, burglary, theft, and a bogus check charge. The trial court instructed the jury that these prior convictions were only admitted into evidence for the limited purpose of showing the degree of care exercised by Executive in hiring Arrington as an armed security guard and his competency to be employed in such a capacity. Appellants argue that the admission of these prior convictions was error because (1) the convictions were too remote in time, (2) Arrington's criminal record was unavailable to Executive at the time of his hiring, (3) the only purpose served by the admission into evidence was to prejudice and inflame the jury, and (4) the prior convictions did not exhibit a propensity to commit acts of violence, as Arrington is charged with in the instant case.

■ Arrington's most recent conviction occurred in 1964, approximately 13 years before his testimony in this case. As a result, appellants contend that these convictions were too remote in time. A number of cases are cited in appellants' brief which all state that a prior conviction may not be admitted for impeachment purposes unless it is sufficiently recent so as to have some bearing on the present credibility of the witness. However, these cases are not relevant to any issue presented by the present case. Arrington's criminal record was not admitted to impeach his credibility.

Appellants also argue that Arrington's prior record was unavailable to Executive at the time he was hired and that it is unfair to charge Executive with knowledge of facts which were unavailable to it. However, the evidence reflects that Arrington's criminal record could have been obtained from at least two sources. The record was available to Arrington himself and, secondly, the record was available to the Texas Board of Private Investigators and Private Security Agencies, which li-

censes private security companies and with whom Executive was required to register its employees. Whether Executive should have pursued these avenues more diligently to discover Arrington's prior record is a question for the jury and does not control its admittance into evidence.

■ The third ground tendered by appellants in support of their second point of error is that Fields' cause of action for negligent hiring was rendered moot by Executive's stipulation that Arrington was within the course and scope of his employment at the time in question. Appellants take the position that the doctrine of negligent hiring is merely a means of imputing liability for the acts of the servant to the master. Where the liability link between the master and the servant has already been established, as in the present case by the stipulation, appellants contend that the negligent hiring issue becomes immaterial. The only purpose served by the admission into evidence of Arrington's criminal record, conclude appellants, was to prejudice and inflame the jury. We disagree.

The basis of responsibility under the doctrine of negligent hiring is the master's own negligence in hiring or retaining in his employ an incompetent servant whom the master knows or by the exercise of reasonable care should have known was incompetent or unfit and thereby creating an unreasonable risk of harm to others. Texas courts have long recognized the master's duty to make inquiry as to the competence and qualifications of those he considers for employment, especially where engaged in an occupation which could be hazardous to life and limb and requires skilled or experienced servants. This is a duty owed by the master to his other servants and to the public. *Texas & Pacific Railway Co. v. Johnson,* 89 Tex. 519, 35 S.W. 1042, 1044 (1896); *Jeffcoat v. Phillips,* 534 S.W.2d 168, 172 (Tex.Civ.App.—Houston [14th Dist.] 1976, ref'd n. r. e.); *Gulf, C. & S. F. Railway Co. v. Hays,* 40 Tex.Civ.App. 162, 89 S.W. 29, 31 (1905, dism'd); *Shoemaker v. Texas & Pacific Railway Co.,* 29 Tex.Civ. App. 578, 69 S.W. 990, 992 (1902, n. w. h.).

The cases in this area are far from clear cut, but through a thorough analysis of the case law, a discernable pattern does appear. The primary factor which distinguishes many of the cases is whether or not punitive damages are sought by the plaintiff. Many of the cases cited in the parties' briefs are ones in which negligent entrustment was asserted as the basis of recovery. While negligent entrustment and negligent hiring are distinct theories of recovery, we believe that in the context of the instant case they are analogous in that both require proof that (1) the servant/entrustee is incompetent or unfit and (2) the master/entrustor knew or in the exercise of ordinary care should have known of such incompetence or unfitness.

■ Where only ordinary negligence is alleged, the case law supports appellants' contention that negligent hiring and respondeat superior are mutually exclusive modes of recovery. In cases where the plaintiff was relying upon the theory of negligent entrustment of a motor vehicle, the courts have refused to permit the plaintiff to proceed with this separate ground of recovery against the owner where the derivative liability of the owner has already been established by an admission or stipulation of agency or course and scope of employment. *Frasier v. Pierce,* 398 S.W.2d 955, 958 (Tex.Civ.App.—Amarillo 1965, ref'd n. r. e.); *Luvual v. Henke & Pillot, Division of Kroger Co.,* 366 S.W.2d 831, 838 (Tex.Civ. App.—Houston 1963, ref'd n. r. e.); *Patterson v. East Texas Motor Freight Lines,* 349 S.W.2d 634, 636 (Tex.Civ.App.—Beaumont 1961, ref'd n. r. e.). The rationale of this rule is equally applicable to a case involving negligent hiring. Once the applicability of the respondeat superior doctrine is established, the competence or incompetence of the servant and the care which was exercised in his employment are immaterial issues. The master is liable for the acts of his servant whether the servant is competent or not.

However, a different situation is presented where the plaintiff has alleged ordinary negligence against the driver and gross

negligence against the owner for entrusting his vehicle to a reckless or incompetent driver. In such cases, the courts have recognized that the negligent entrustment cause of action would be an independent and separate ground of recovery against the owner for exemplary damages. *Hines v. Nelson*, 547 S.W.2d 378, 385 (Tex.Civ. App.—Tyler 1977, n. w. h.); *Adams Leasing Co. v. Knighton*, 456 S.W.2d 574, 576 (Tex. Civ.App.—Houston [14th Dist.] 1970, n. w. h.). The owner of a vehicle, charged with gross negligence in the entrustment of a vehicle, may not preclude proof thereof by admitting or stipulating agency on the part of the driver or that the driver was within the course and scope of employment. *Hines v. Nelson*, supra; *Adams Leasing Co. v. Knighton*, supra. A master may be guilty of gross negligence in hiring an incompetent servant and held liable for exemplary damages where the servant is only found guilty of ordinary negligence. *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180 (Tex.Civ.App.—Waco 1977, ref'd n. r. e.).

In addition, it is well settled that a master may be subject to derivative liability for exemplary damages resulting from the acts of his servant where (1) the master authorized the doing and the manner of the act, (2) the servant was employed in a managerial capacity and acting within the scope of his employment, (3) the master ratified or approved the act, or (4) the master was negligent in employment of the servant. *Wagner v. Hall*, 519 S.W.2d 488, 491 (Tex. Civ.App.—El Paso 1975, n. w. h.); *P. C. Sorenson Co. v. Bell*, 326 S.W.2d 271, 273 (Tex.Civ.App.—Dallas 1959, ref'd n. r. e.); *Union Transports, Inc. v. Braun*, 318 S.W.2d 927, 941 (Tex.Civ.App.—Eastland 1958, n. w. h.). Therefore, where liability for exemplary damages is sought to be charged against the servant, a stipulation of course and scope of employment by the master may not preclude proof of negligent hiring and thereby prevent imputation of the servant's liability to the master.

■ In the instant case, plaintiff charged that both Executive and Arrington were guilty of gross negligence and prayed that punitive damages be recovered against both. The character of Arrington became a material fact issue of the case. Where a master is charged with hiring or retaining in his employ an incompetent servant, the servant's character is then in issue and may be proven by evidence of reputation or of specific conduct for the purpose of showing that the master knew or by exercising ordinary care should have known of the servant's incompetence. 2 McCormick & Ray, Texas Law of Evidence, sec. 1502, p. 347 (2d Ed. 1956).

■ Finally, appellants argue that the trial court erred by allowing Arrington's criminal record into evidence, because the convictions fail to exhibit a propensity for violence. The basis of appellants' contention is that Arrington's record was admitted to prove his character and thereby infer that he acted in conformity therewith on the night in question. That is not the case. The convictions were admitted for the limited purpose of showing that Executive failed to exercise reasonable care and was reckless in employing Arrington as an armed security guard. Arrington's record was probative of Executive's diligence in inquiring as to Arrington's competency and the trial court did not err in admitting it into evidence. The trial court is afforded wide discretion in balancing the probative value of such evidence against the possibility that it might prejudice or inflame the jury. 2 McCormick & Ray, Texas Law of Evidence, sec. 1481, p. 330 (2d Ed. 1956). Appellants' second point of error is overruled.

■ We shall next address the complaint raised in appellants' first point of error which contends the trial court erred in failing to grant a new trial on grounds of newly discovered evidence. Appellants filed an amended motion for new trial alleging that new facts had been discovered subsequent to the trial. These facts, alleged to have been previously unknown through no lack of diligence on the part of appellants, showed that plaintiff had a lengthy criminal record involving acts of violence. Appellants contended that these

facts were probative of the issue of who was the aggressor on the night in question and were so material that a different result would be had at a new trial. A hearing on appellants' amended motion for new trial was held and the trial court overruled appellants' motion. We sustain this ruling.

Appellants' amended motion for new trial was not supported by any affidavits. In addition, the record on appeal fails to show that appellants offered any evidence at the hearing on their amended motion for new trial.

A motion for new trial on grounds of newly discovered evidence presents the court with a series of fact questions, the determination of which will be largely left to the discretion of the trial court. *Dorbandt v. Jones,* 492 S.W.2d 601, 603 (Tex. Civ.App.—Austin 1973, ref'd n. r. e.). It is well settled that in order to require the granting of a new trial on grounds of newly discovered evidence, *it is essential that the moving party introduce admissible, competent evidence at the hearing on the motion for new trial* showing (1) the existence of the newly discovered evidence, (2) that the moving party had no notice of the existence of such evidence prior to the time of trial, (3) that due diligence was exercised to procure the evidence prior to trial, (4) that the evidence is not merely cumulative and does not tend only to impeach, and (5) that the evidence would produce a different result if a new trial were granted. *Anderson v. Griffith,* 501 S.W.2d 695, 702–703 (Tex.Civ. App.—Fort Worth 1973, ref'd n. r. e.); *Jacobi v. Texas State Board of Medical Examiners,* 308 S.W.2d 261, 265 (Tex.Civ.App.— Waco 1957, ref'd n. r. e.); McDonald, Texas Civil Practice, Vol. 4, sections 18.16.1–18.- 16.5, pp. 285–291.

Appellants cannot claim any error where no admissible, competent evidence was offered at the hearing on their motion for new trial showing the existence of the alleged newly discovered evidence. *New Amsterdam Casualty Company v. Jordan,* 359 S.W.2d 864, 865 (Tex.1962); *Buhidar v. Abernathy,* 541 S.W.2d 648, 653 (Tex.Civ.App. —Corpus Christi 1976, ref'd n. r. e.); *Bul-*

*lard v. Carroll Equipment Company,* 539 S.W.2d 384, 386 (Tex.Civ.App.—Waco 1976, n. w. h.); *Anderson v. Griffith,* supra; *Meehan v. Pickett,* 463 S.W.2d 481, 483 (Tex. Civ.App.—Beaumont 1971, ref'd n. r. e.); *Davis Bumper to Bumper, Inc. v. Roberts,* 331 S.W.2d 762, 767 (Tex.Civ.App.—Amarillo 1959, ref'd n. r. e.); *Jacobi v. Texas State Board of Medical Examiners,* supra. The trial court did not abuse its discretion in overruling appellants' amended motion for new trial on grounds of newly discovered evidence, since none was shown. Appellants' first point of error is without merit and hereby overruled.

Appellants' points of error nos. 6–11 challenge the jury's responses to Special Issues Nos. 4, 6, 7, and 9. Appellants contend that the jury's findings, that Arrington failed to act as a reasonably prudent armed security guard should have acted under the same or similar circumstances and that such failure constituted gross negligence, have no support in the evidence and are so against the great weight and overwhelming preponderance of the evidence as to be manifestly unjust. In addition, appellants assert that the jury's failure to find that Fields provoked Arrington to the point that Arrington's actions thereafter were that of a reasonably prudent armed security guard and that Arrington was acting in self-defense on the occasion in question was so against the great weight and preponderance of the evidence as to be manifestly unfair and unjust.

Legal sufficiency, "no evidence," points are directed at the submission of the special issues to the jury; the real complaint is that as a matter of law the evidence presents no fact question for the jury's determination. Factual sufficiency, "insufficient evidence," points challenge the jury's answers to the special issues. We must construe appellants' points of error in the instant case as factual sufficiency points, because appellants' attack is directed at the jury's responses to the special issues in question. In determining a factual sufficiency point, we must consider and weigh all the evidence to determine whether the

verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust and the finding therefore be set aside and the cause remanded for a new trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Tex.L.Rev. 803 (1952).

Where the evidence is conflicting, the jury must decide the conflict. It was within the jury's province to judge the credibility of the witnesses and the weight to be given their testimony and to resolve conflicts and inconsistencies in the evidence. *Austin Fire Insurance Company v. Adams-Childers Company*, 246 S.W. 365, 368 (Tex. Com.App.1923, holding app'd); *Owens v. Acme Oil Company*, 408 S.W.2d 947, 951 (Tex.Civ.App.—Tyler 1966, ref'd n. r. e.); *Peck v. Century Concrete Products, Inc.*, 375 S.W.2d 459, 462 (Tex.Civ.App.—Fort Worth 1964, ref'd n. r. e.).

We have examined the entire statement of facts and reviewed it in light of the rule announced by the Supreme Court in *In re King's Estate*, supra. We deem the evidence sufficient to support the jury's answers to the special issues submitted and conclude that none of the jury's answers in response to Special Issues Nos. 4, 6, 7, and 9 are so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Appellants' points of errors nos. 6–11 are hereby overruled.

Appellants' twelfth point of error contends that the jury's award of $500,000.00 for actual damages was excessive and demonstrated that the jury was actuated by prejudice and passion rather than by reason and the evidence. The jury was instructed to consider certain elements of damage, if any, in reaching their determination. The elements of damage to be considered were loss of earnings sustained in the past, loss of earning capacity which will be sustained in the future, physical pain and mental anguish suffered in the past and that which in reasonable probability will be suffered in the future, and physical impairment sustained in the past (other than loss of earnings) and which in reasonable probability will be sustained in the future (other than loss of earning capacity).

In determining whether a verdict is excessive, an appellate court may review only that evidence which is favorable to the award, and the jury's determination will not be disturbed as excessive where there is any probative evidence to sustain the award. *Southern Pacific Transportation Company v. Peralez*, 546 S.W.2d 88, 98 (Tex. Civ.App.—Corpus Christi 1976, ref'd n. r. e.); *Johnson v. Buck*, 540 S.W.2d 393, 417 (Tex.Civ.App.—Corpus Christi 1976, ref'd n. r. e.); *Hammond v. Stricklen*, 498 S.W.2d 356, 363 (Tex.Civ.App.—Tyler 1973, ref'd n. r. e.); *Monsanto Company v. Milam*, 480 S.W.2d 259, 268 (Tex.Civ.App.—Houston [14th Dist.] 1972, aff'd 494 S.W.2d 534 [Tex. 1973]). The burden of establishing that the jury's evaluation of damages is erroneous is upon the complaining party. *Hammond v. Stricklen*, supra. There must be some proof, circumstantial or direct, of bias or prejudice and in the absence of an affirmative showing of such, the appellate court must give every reasonable inference to the evidence in favor of the verdict. *Southern Pacific Transportation Company v. Peralez*, supra; *Hammond v. Stricklen*, supra; *Sunset Brick & Tile, Inc. v. Miles*, 430 S.W.2d 388, 393 (Tex.Civ.App.—Corpus Christi 1968, ref'd n. r. e.).

In the instant case, the record shows that prior to the incident here in question, plaintiff had been employed as a heavy equipment operator. Immediately prior to the shooting, Fields was working as a crane operator with an income of $1,200.00 to $1,400.00 a month. He was in good health. The record also shows that Fields has been unable to return to work because of the injuries resulting from the gunshot wound, although he did testify that he had attempted to go back working as a crane operator. He found himself in great pain, unable to climb up into the crane, and unable to completely control his urination. Fields has a life expectancy of 41.4 years.

Upon being admitting to Hermann Hospital after the shooting, Fields underwent emergency abdominal surgery. The postoperative diagnosis in the surgical operation report stated:

"Penetrating gunshot wound to the left lower quadrant, traversing properitoneally, striking the pubis symphysis and glancing deep through the bladder and exiting the bladder, entering the parietal pritoneum [sic] immediately, not involving any intra-peritoneal structures, becoming lodged deep to the iliac vessels and not involving the iliac vessels."

A pathology report on pubic bone tissue sent to be analyzed noted "fragments of bone and cartilage and granulation of tissue." In addition, x-rays revealed that there had been some fragmentation of the bullet in the pelvis and Fields still carries some of these fragments. Appellant Arrington called Dr. Thomas McGuire, a neurosurgeon who had examined Fields, to testify concerning plaintiff's injuries. Dr. McGuire noted that soft tissue in the path of such a bullet was subject to burning, infection, and scarring. This type of wound can cause internal scar tissue which may result in infection, shortening, adhesions, deformities, and pain. In addition, Dr. McGuire stated that a gunshot wound in the lower abdomen is a severe trauma which is capable of inducing shock.

As a result of this gunshot wound, Fields has been hospitalized a number of times. Immediately after the shooting, Fields was hospitalized for about a month and underwent emergency abdominal surgery. On October 16, 1974, Fields was again hospitalized as a result of low abdominal pain and fever and once again underwent surgery. Some evidence of destruction of the pubic bone was noted and it was felt that Fields probably had osteitis pubis. Fields remained in the hospital for nearly two weeks. Fields has since been hospitalized a couple of times for a recurrent bladder infection. The bullet was finally removed in March, 1975, and in December, 1975, Fields developed an incisional hernia which had to be repaired.

Fields complains of constant, throbbing pain in his right buttocks which radiates to his right leg and is aggravated by activity. He also contends that he is unable to completely control his urine and must urinate some 25 times a day to avoid wetting on himself. Fields complains of numbness from his hips and groin area, including his testicles, down his legs to his toes which continues with varied severity. Fields was examined by a neurosurgeon, Dr. Alexander Gol, who testified that he had observed palpable muscle spasms in Fields' lower back. Dr. Gol stated that such an involuntary spasm constituted an objective sign of pain which appeared to be permanent. Fields testified that he had had no sex drive since the shooting and suffered from anxiety because of his inability to provide for his family. Dr. Gol had prescribed a mood elevator, in addition to pain killers, for Fields to help him cope with the pain.

The jury has large discretion in fixing the amount of the award in a case such as this, because personal injury damages are unliquidated and not capable of measurement by a definite standard. *Southern Pacific Transportation Company v. Peralez*, supra. This is particularly true in a case, such as this, where pain and suffering are an important element. Matters such as pain and suffering are peculiarly within the discretion of the jury. *Hammond v. Stricklen*, supra; *Monsanto Company v. Milam*, supra. We conclude that there was some evidence to support the award in this case and that the jury's verdict was not excessive. Appellants' twelfth point of error is overruled.

Appellants' points of error nos. 13 and 14 contend that the jury's awards of $200,000.00 exemplary damages against Executive and $100,000.00 exemplary damages against Arrington were excessive and demonstrate that the jury was actuated by prejudice and passion rather than by reason and the evidence. The jury found both Executive and Arrington to be guilty of gross negligence which was defined as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference

to the rights and welfare of the public." Executive and Arrington were, therefore, subject to exemplary damage liability.

In determining the amount of exemplary damages to be awarded, the law furnishes no definite measure of damages and they are of an unliquidated nature. The amount to be awarded rests largely in the discretion of the jury. *Southwestern Investment Company v. Neeley*, 452 S.W.2d 705, 708 (Tex.1970); *Russell v. Truitt*, 554 S.W.2d 948, 955 (Tex.Civ.App.—Fort Worth 1977, ref'd n. r. e.); *Skillern & Sons, Inc. v. Stewart*, 379 S.W.2d 687, 692 (Tex.Civ.App. —Fort Worth 1964, ref'd n. r. e.). In considering a point of error asserting excessiveness of an exemplary damage award, we must weigh such factors as the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, and the size of the award needed to deter similar wrongs in the future. In addition, the amount of exemplary damages awarded should be reasonably proportioned to the actual damages found. *Southwestern Investment Company v. Neeley*, supra at 707; *Cain v. Fontana*, 423 S.W.2d 134, 139 (Tex.Civ.App.—San Antonio 1967, ref'd n. r. e.); *Schutz v. Morris*, 201 S.W.2d 144, 147 (Tex.Civ.App.—Austin 1947, n. w. h.). We refer to the evidence set out in the first part of this opinion and conclude that the jury did not act unreasonably or abuse its discretion. Appellants' thirteenth and fourteenth points of error are overruled.

Appellants' fifteenth point of error contends that the trial court erred in granting judgment against appellants for $800,000.00 because Fields accepted a settlement from Stop N'Go and thereby entitled appellants to "an offset of the amount he accepted in settlement or, alternatively, plaintiff released one-half of his cause of action by accepting such settlement." Appellants state that they "believe" Stop N'Go paid plaintiff $300,000.00 under "some sort of 'Mary Carter' agreement." It is appellants' position that under Article 2212a, section 2(d), Tex.Rev.Civ.Stat.Ann., they should be allowed to deduct the amount paid by Stop N'Go in the settlement with plaintiff. In the alternative, appellants argue that plaintiff released one-half of his cause of action by settling with Stop N'Go which should therefore cause appellants' joint and several liability to be reduced by one-half.

There is nothing in the record which shows that any settlement was made between Stop N'Go and plaintiff. The record merely reflects that plaintiff non-suited Stop N'Go prior to trial. Appellants admit in their brief that no evidence of any settlement, or the terms thereof, was presented to the trial court. We are unable to consider any statements in appellants' brief which are completely outside the record and unsupported by any evidence. *Schlang v. Schlang*, 415 S.W.2d 28, 29 (Tex.Civ.App.— Houston 1967, ref'd n. r. e.). Appellants also admit that no special issues regarding any alleged negligence on the part of Stop N'Go were requested or submitted to the jury. There are no findings to support appellants' conclusion that Stop N'Go is a joint tortfeasor.

Appellee Fields contends that appellants are precluded from raising this point of error on appeal because it is not germane to any assignment of error in appellants' amended motion for new trial. Since this case was tried prior to January 1, 1978, the question of whether appellant properly preserved his right to complain of some alleged error must be determined on the basis of the Rules of Civil Procedure as they existed at the time of the trial. *Noe Diaz and Alice Diaz v. Deavers*, 574 S.W.2d 602, 604 (Tex.Civ.App.—Tyler 1978, app. pndng.). The appellants' points of error in a case such as this, where a motion for new trial was necessary, are restricted to the assignments set forth in their amended motion for new trial. Appellants' fifteenth point of error is not germane to any assignment of error in their amended motion for new trial and any alleged error is therefore waived. *Rivas v. Community Savings and Loan Association*, 563 S.W.2d 388, 390 (Tex. Civ.App.—San Antonio 1978, n. w. h.). Appellants' fifteenth point of error is overruled.

We have considered all of appellants' points of error and believe them to be without merit and the same are overruled. The judgment of the trial court is affirmed.