# Supreme Court of Texas

No. 23-0493

Werner Enterprises, Inc. and Shiraz A. Ali,

*Petitioners*,

v.

Jennifer Blake, individually and as next friend for Nathan Blake, and as heir of the estate of Zackery Blake, deceased; and Eldridge Moak, in his capacity as guardian of the estate of Brianna Blake,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

JUSTICE YOUNG, joined by Justice Huddle, concurring.

The Court resolves today's case by holding that tort liability may not be imposed as a matter of law. Had the court of appeals similarly answered that antecedent tort-law question, it could not have proceeded to address the "admission rule." With respect to that issue, therefore, today's decision wipes the slate clean, and the court of appeals' discussion of the admission rule is no longer a precedent even in that court. The lower courts accordingly remain free to proceed in the normal course until a future case allows this Court to settle the matter.

At the outset, it was possible that this case would be the one in which we could do so. The parties and multiple amici, like the justices of the court of appeals, devoted considerable energy to examining competing perspectives concerning the admission rule's contours. Speaking at least for myself, the prominence and importance of that issue played a meaningful role in the Court's decision to grant the petition. The approach taken by the court of appeals' majority struck me—and still strikes me—as one that cries out for review. I am aware of no other Texas court to have *rejected* the admission rule. And there are strong reasons to think that the court of appeals' rationale for doing so here is seriously flawed.

I therefore write separately to sketch some observations about the admission rule. In doing so, of course, I leave open all possible outcomes in future cases. My hope is that addressing the issues today without finally resolving them will facilitate their presentation when the Court must squarely confront them and thus make it more likely that, when we do, we will do so with a high degree of accuracy.

By way of background, the eponymous "admission" in the so-called "admission rule" is that of an employer that has been sued for its employee's tort. The rule provides that when such an employer admits or stipulates that the employee was indeed acting within the course and scope of his employment, it is pointless—or worse—to submit wholly derivative claims to the jury. *See, e.g.*, *McHaffie v. Bunch*, 891 S.W.2d 822, 827 (Mo. 1995) ("[O]nce the agency relationship was admitted, it was error to permit a separate assessment of fault [as] to [the] defendant . . . based upon the 'negligent entrustment' or 'negligent hiring' theories of

liability.  It was also error to admit evidence on those theories.").

Assuming that claims like negligent entrustment, training, hiring, and supervision are proper in the first place, they are derivative in the sense that they cannot succeed on their own but require a predicate finding of negligence by the employee.  But finding that the employee was negligent should be the end of the matter given the employer's admission that *it* would be on the hook.  All the derivative claims are thus wholly beside the point, so there is no valid reason to submit such claims to the jury or make them the basis for discovery.  It is this principle that animates the admission rule.  *See, e.g.*, Restatement (Third) of Agency § 7.05, reporter's note b (2006) (observing that, "[i]n at least some jurisdictions, if an employer stipulates that an employee acted within the scope of employment in committing a tort, the employer is not subject to liability" for derivative claims like negligent hiring or supervision).

Consistent with that understanding, our courts of appeals have generally taken it as a given that, at least when only ordinary negligence is alleged, respondeat superior and negligent-entrustment claims are mutually exclusive theories of recovery, so acceptance of respondeat superior with respect to the alleged negligence of the tortfeasor leaves no room for derivative-negligence claims.*  Respondeat superior is a way to

---

* At least six courts of appeals have recognized the doctrine.  *See, e.g.*, *Atl. Indus., Inc. v. Blair*, 457 S.W.3d 511, 517 (Tex. App.—El Paso 2014), *rev'd on other grounds*, 482 S.W.3d 57 (Tex. 2016); *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 654 (Tex. App.—Dallas 2002, pet. denied); *Arrington's Est. v. Fields*, 578 S.W.2d 173, 178–79 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.); *Frasier v. Pierce*, 398 S.W.2d 955, 957–58 (Tex. Civ. App.—Amarillo 1965, writ ref'd n.r.e.); *Luvual v. Henke & Pillot*, 366 S.W.2d 831, 838 (Tex. Civ. App.—Houston 1963, writ ref'd n.r.e.); *Patterson v. E. Tex. Motor Freight Lines*, 349 S.W.2d 634, 636 (Tex. Civ. App.—Beaumont 1961, writ ref'd n.r.e.).

hold an employer responsible *without* having to show the employer's separate negligence. When an employer admits to course and scope, the admission rule requires the plaintiff to accept "yes" for an answer: *yes, as the employer, we will answer for our employee tortfeasor's negligence.*

The admission rule played a significant role in this case. When Werner moved for a directed verdict, it invoked the rule by pointing to its admission that its truck driver was within the course and scope of his employment at the time of the tragic accident. For that reason, Werner contended, submitting the derivative-negligence claims, premised on alleged negligence of employees other than the driver, was improper.

The trial court denied the motion for directed verdict. The court of appeals affirmed the trial court's judgment in full, including as to the admission-rule issue. 672 S.W.3d 554, 586–89 (Tex. App.—Houston [14th Dist.] 2023) (en banc). The court held that the admission rule did not apply because that court had not recognized it and because, even if it had, an exception for gross negligence would allow plaintiffs to press both respondeat superior and derivative negligence. *Id.* at 587–89.

In dissent, Justice Wilson would have formally adopted the admission rule. *Id.* at 629–36 (Wilson, J., dissenting). He would have held, moreover, that the admission rule barred the derivative-negligence claims proffered in this case as wholly derivative of the driver's alleged negligence—that is, Werner's admission of respondeat superior liability already encompassed the entire injury. *Id.* at 643.

The problem is one of judicial administration—keeping pre-trial and trial proceedings from needlessly proliferating—but it is more than that. Admitting evidence of the employer's hiring, training, or supervision

practices, if formally irrelevant, not only jeopardizes efficiency but also threatens the integrity of the results. The damages are what they are; the extent of the injuries is what it is. If the employer accepts full responsibility, inflaming a jury by admitting evidence of alleged negligence of multiple employees other than the driver risks inflating damages beyond their actual amount or distorting the attribution of liability (or both). At least, that rationale seems persuasive and pervasive in judicial opinions adopting the rule.

Given the Court's disposition today, though, I agree that there is no opportunity to *resolve* the admission-rule issue here; the judgment of rendition subsumes any remand points, including violations of the admission rule. But in light of the airing of the issues in the lower courts and by the parties and amici in this Court, I think it is only fair to state that Justice Wilson's position strikes me as highly convincing, and barring something at least as convincing in a future case, I am inclined to vote to adopt the admission rule for the reasons articulated in his dissent and to apply it in the way that his dissent describes. If this case had *not* been resolved on tort-law grounds, after all, the jury's apportionment of fault seems to illustrate a prime example of the very confusion the admission rule aims to prevent. When assigning percentage of fault between just the two drivers, the jury assigned Werner's driver 45% fault and Salinas (the other driver) 55% fault. But a later question included a negligent hiring, training, and supervision claim against Werner and instructed the jury to consider allegedly negligent acts of Werner employees other than its driver, some of which were quite remote from the accident in time and place. The jury *then*

5

assigned Werner 70% fault and the driver 14% fault—which is to say, 84% for Werner, given its acceptance of the driver's liability, and only 16% for Salinas. Thus, the inclusion of the derivative-negligence claims in the jury's considerations nearly doubled Werner's percentage of responsibility. *See* 672 S.W.3d at 634 (Wilson, J., dissenting).

All these points may be simple enough, but the case also presents a complicating issue: the viability of an exception that bars the application of the admission rule where the plaintiff presents evidence of gross negligence. The theory behind the exception is that even if the admission rule rightly operates when the derivative claim stems from the same injury and thus should generate only the same compensatory damages, gross negligence can also trigger *punitive* damages against the employer. Proving the *employee tortfeasor's* conduct will *not* suffice to establish the employer's gross negligence, the rationale goes; rather, punitive damages are available

> if, but only if,
>
>> (a) the principal authorized the doing and the manner of the act, or
>>
>> (b) the agent was unfit and the principal was reckless in employing him, or
>>
>> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
>>
>> (d) the employer or a manager of the employer ratified or approved the act.

*Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997) (quoting Restatement (First) of Torts § 909 (1939)). Evidence that is clearly superfluous when only *compensatory* damages are at issue is not so obviously superfluous when a plaintiff seeks *punitive* damages

6

against the employer. At least one Texas appellate court has applied the admission rule with this exception, *see Arrington's Est. v. Fields*, 578 S.W.2d 173, 178–79 (Tex. Civ. App.—Tyler 1979, writ ref'd n.r.e.), and one has applied the admission rule without it, *see Rodgers v. McFarland*, 402 S.W.2d 208, 210 (Tex. Civ. App.—El Paso 1966, writ ref'd n.r.e.).

In this case, the court of appeals held that since the Blakes *pleaded* gross negligence, the admission rule would not apply regardless of whether the court formally adopted it. 672 S.W.3d at 588. The dissent did not contend that there could never be an exception for gross negligence, but it asserted that there must at least be legally sufficient evidence of gross negligence—not a mere allegation—before the exception applies. *Id.* at 637 (Wilson, J., dissenting) ("If an injured party only needs to allege gross negligence, malice, or fraud and seek exemplary damages to avoid application of the Admission Rule, many injured parties may avoid the Admission Rule by so pleading."). Otherwise, the admission rule would be a mere bauble in the law—a vestige easily evaded simply by asserting gross negligence, regardless of how implausibly.

Given that the *only* basis for disregarding the admission rule is to proceed to punitive damages, and given that our State's law imposes onerous burdens before punitive damages are even available, *see, e.g.*, Tex. Civ. Prac. & Rem. Code § 41.003, it is hard to imagine that the admission rule would yield up its benefits with only a formulaic incantation that gross negligence is alleged. Instead, I would be surprised if the law required anything less than a rigorous showing that a jury genuinely *could* find gross negligence that in turn could support punitive damages. Whether and how a gross-negligence exception would apply are

7

important questions that this Court will presumably need to address in an appropriate case. In the interim, however, trial courts should be very cautious about using a mere allegation of gross negligence as a basis to honor the admission rule in theory but defeat it in practice. If a gross-negligence claim that forms the basis for disregarding the admission rule in a given case turns out to have been ill-founded, I would be inclined to remand for a new trial on that ground—wholly aside from anything else in the case. As always, sound discretion requires discernment and prudence to avoid serious prejudice and legal error.

There are further complexities still, of course, such as whether or to what extent derivative-negligence claims are available at all and, if any are, how to define their scope with precision and how to identify the quantum and quality of evidence necessary to establish them. But I see little need today to dive further into the weeds on that or the other remaining topics. Instead, at least for now, I am content to rely on Justice Wilson's scholarly dissent. As a general matter, his analysis strikes me as presumptively correct. Litigants in future cases would be wise to grapple with that analysis, particularly if they are advancing arguments in this Court.

Evan A. Young
Justice

**OPINION FILED:** June 27, 2025

8